**NORMA FAYE PYLES LYNCH FAMILY PURPOSE LLC**

v.

**PUTNAM COUNTY, Tennessee et al.**

Supreme Court of Tennessee,
at Nashville.

June 3, 2009 Session.

Dec. 16, 2009.

Robert A. Anderson, Nashville, Tennessee, for the appellant, Norma Faye Pyles Lynch Family Purpose LLC.

Jeffrey G. Jones, Cookeville, Tennessee and Daniel H. Rader, III, Cookeville, Tennessee, for the appellees, Putnam County, Tennessee and City of Cookeville, Tennessee.

OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

This appeal involves the obligation of local governments to obtain a certificate of public purpose and necessity in order to condemn private property to develop an industrial park. Putnam County and the City of Cookeville filed a condemnation complaint in Circuit Court for Putnam County but then voluntarily dismissed their complaint to allow time to obtain the certificate of public purpose and necessity required by Tenn.Code Ann. § 13–16–207(f) (Supp.2009). The property owner then filed a motion seeking attorney's fees and costs, as well as a separate action seeking a partition in kind, an accounting, and damages. In response, the City and the County opposed the property owner's

request for attorney's fees and filed an answer in the partition case that included a counterclaim to condemn the property. The City and the County also moved to set aside the voluntary dismissal of their original condemnation complaint. The trial court granted the City's and the County's motion to vacate the dismissal of their condemnation complaint, consolidated the condemnation and partition proceedings, and reserved addressing the property owner's request for attorney's fees. After the trial court denied its application for an interlocutory appeal, the property owner filed an application for extraordinary appeal in the Court of Appeals. After the Court of Appeals declined to grant the extraordinary appeal, the property owner renewed its application for an extraordinary appeal in this Court. After this Court granted the property owner's application, the City and County formally abandoned their efforts to condemn the property and requested this Court to dismiss the property owner's appeal on the grounds of mootness. We have determined that the appeal should not be dismissed for mootness and that the trial court erred by failing to dismiss the City's and the County's condemnation complaint because it had been filed before the City and County obtained the certificate of public purpose and necessity required by Tenn.Code Ann. § 13–16–207(f).

## I.

In order to promote economic growth, Putnam County and the City of Cookeville agreed to develop a mixed-use business park called Highlands Business Park on 367 acres southwest of Cookeville and adjacent to I–40. In July 2006, the City and the County agreed to share equally the cost of acquiring the ten tracts of mainly undeveloped property on which Highlands Business Park would be constructed. They also agreed that each of them would sell $7.2 million in general obligation bonds to finance the design and infrastructure.

The City and County then negotiated with the landowners to acquire the property and eventually purchased all the property except for an undivided one-fifth interest in three parcels that was owned by the Norma Faye Pyles Lynch Family Purpose LLC ("Lynch LLC") which was located in Nashville. These parcels, consisting of 52.88 acres, 11.30 acres, and 9.90 acres, were located on both the north and south side of I–40 in the general area where the proposed Mine–Lick Creek Interchange would be located. Whether the City or the County ever attempted to negotiate the purchase of the Lynch LLC's interest in these tracts is disputed.

On November 1, 2007, the Cookeville City Council authorized the city attorney to file an action to condemn the Lynch LLC's interest in the property. The Putnam County Commission followed suit on November 19, 2007. On February 1, 2008, the City and the County filed a petition in the Circuit Court for Putnam County seeking to acquire the Lynch LLC's[1] interest in the property by eminent domain. They also tendered $296,320 as the fair market value of the interest they were seeking to acquire.

On March 28, 2008, the Lynch LLC filed a motion to dismiss the amended petition for failure to comply with the statutory requirements that the petition fully describe the project to be constructed and that the petition recite all the statutory

---

1. The City and County did not name the correct property owner in their February 1, 2008 petition. However, on March 27, 2008, they filed an amended petition naming the Lynch LLC as the owner. On the same day, the trial court entered an order changing the name of the defendant to Lynch LLC.

authority for the condemnation. In order to allow for the time necessary to obtain the certificate of public purpose and necessity required by Tenn.Code Ann. § 13–16–207 (Supp.2009), both the City and the County requested voluntary dismissal without prejudice of their amended petition in accordance with Tenn. R. Civ. P. 41.01. The trial court entered an order on May 2, 2008, dismissing the petition and taxing the costs to the City and County.

On May 6, 2008, the Lynch LLC filed a motion seeking the payment of its attorney's fees in the amount of $7,222.50 in accordance with Tenn.Code Ann. § 29–17–912(b)(2) (Supp.2009) on the ground that the City and County had abandoned the condemnation proceeding. Two days later, on May 8, 2008, the Lynch LLC filed suit against the City and the County in the Circuit Court for Putnam County seeking a partition in kind, an accounting, and damages. The City and County responded to the motion for attorney's fees that the amount of the requested fee was unreasonable and that "the eminent domain proceedings will be reinstated once [the Certificate of Public Purpose and Necessity] is obtained from the State of Tennessee." On May 30, 2008, the City and County filed their answer in the partition suit, along with a counterclaim again seeking to condemn the Lynch LLC's interest in the property.

In addition to their answer and counterclaim, the City and the County moved to vacate the May 2, 2008 order granting the voluntary dismissal of their condemnation petition and to consolidate the partition suit with the condemnation suit. They represented in their motions that they had "not abandoned their desire to procure this property by eminent domain" and that "they are in the process of procuring a certificate of public purpose so that they may proceed with the eminent domain proceedings."[2] They also requested that their motions be "held in abeyance pending the acquisition of said certificate of public purpose as part of the eminent domain and condemnation proceedings." On October 8, 2008, following a hearing on July 21, 2008, the trial court entered an order (1) setting aside its May 2, 2008 order granting the City and the County a voluntary dismissal, (2) consolidating the condemnation proceeding and the partition proceeding, and (3) reserving the Lynch LLC's motion for attorney's fees in the condemnation proceeding.

In a motion filed on October 15, 2008, the Lynch LLC asked, among other things, for permission to seek an interlocutory appeal under Tenn. R.App. P. 9 from the trial court's October 8, 2008 order. The trial court overruled this request in an order filed on November 13, 2008. On November 26, 2008, the Lynch LLC filed a Tenn. R.App. P. 10 application for an extraordinary appeal with the Court of Appeals. When the appellate court denied this application on December 4, 2008, the Lynch LLC filed a Tenn. R.App. P. 10 application for extraordinary appeal with this Court, limited to the following ques-

---

**2.** The record, however, shows that the City and County did not receive their engineer's proposal to prepare the application for the Certificate of Public Purpose and Necessity until June 12, 2008. The Cookeville City Council did not approve this contract until July 3, 2008. The Cookeville City Council and the Putnam County Commission did not authorize the filing of the application for the certificate until October 2 and October 26,

2008 respectively. The application was not filed with the Building Finance Committee of the Tennessee Board for Economic Growth until November 25, 2008. In a letter to counsel for Lynch LLC dated June 18, 2008, counsel for the City estimated that it would take fifteen to eighteen weeks to prepare the application, and that the Building Finance Committee would act on the application thirty to sixty days after it was filed.

tion: "[w]hether a condemnation suit filed in violation of the mandated procedural requirements of Tenn.Code Ann. § 13–16–207(f) by not having first secured a Certificate of Public Purpose and Necessity should have been dismissed by the Trial Court as a violation of the procedural due process rights of the Norma Fay Pyles Lynch Family Purpose LLC." On January 22, 2009, we granted the Lynch LLC's application for an extraordinary appeal.

On February 10, 2009, the City and the County filed a notice that they desired to dismiss their condemnation petition and their condemnation counterclaim in the partition action with full prejudice. On February 17, 2009, the Putnam County Commission voted to reconfigure the Highlands project to exclude the disputed tracts. The Cookeville City Council did likewise on March 2, 2009. Three days later, on March 5, 2009, the Building Finance Committee issued two Certificates of Public Purpose and Necessity approving the reconfigured Highlands project that did not include the disputed property.

On March 17, 2009, the City and the County filed a motion in this Court requesting the dismissal of Lynch LLC's appeal on the ground of mootness. In affidavits supporting the motion, the city manager and county executive stated that the City and the County had abandoned their plans to condemn the disputed property. Based on their abandonment of their efforts to condemn the Lynch LLC's interest in the property, the City and the County insisted that "all matters pending in this appeal ... are fully moot." The Lynch LLC opposed the motion on the ground that the issue regarding the proper interpretation and application of Tenn. Code Ann. § 13–16–207(f) was an "interest of public character" that "applies to any landowner." On April 9, 2009, this Court filed an order denying the City and the

County's motion to dismiss the appeal and directing the parties to address three issues: (1) whether the City's and the County's representation that they are voluntarily ceasing their condemnation action is an adequate basis for finding that the Lynch LLC's extraordinary appeal is moot, (2) whether the issue raised in the Lynch LLC's appeal is one of such great public importance that it calls for an exception to the mootness doctrine, and (3) whether and how the attorney's fees should be taxed if either or both of the underlying cases are moot.

## II.

The Constitution of Tennessee does not expressly define the powers of the Legislative, Executive, or Judicial Branches of government. *Richardson v. Young*, 122 Tenn. 471, 493, 125 S.W. 664, 668 (1909). Thus, while Article III, Section 2 of the United States Constitution confines the jurisdiction of the federal courts to "cases" and "controversies," the Constitution of Tennessee contains no such direct, express limitation on Tennessee's courts' exercise of their judicial power. U.S. Const. art. III, § 2; Tenn. Const. art. I, §§ 1–2; *Miller v. Miller*, 149 Tenn. 463, 484, 261 S.W. 965, 971 (1924) (noting that the Constitution of Tennessee does not contain limitations similar to those in Article III, Section 2).

Despite the absence of express constitutional limitations on the exercise of their judicial power, Tennessee's courts have, since the earliest days of statehood, recognized and followed self-imposed rules to promote judicial restraint and to provide criteria for determining whether the courts should hear and decide a particular case. These rules, commonly referred to as justiciability doctrines, are based on the judiciary's understanding of the intrinsic role of judicial power, as well as its respect for

the separation of powers doctrine in Article II, Sections 1 and 2 of the Constitution of Tennessee.

■ Tennessee's courts believed that "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions." *State v. Wilson*, 70 Tenn. 204, 210 (1879); *see also Gilreath v. Gilliland*, 95 Tenn. 383, 385–86, 32 S.W. 250, 251 (1895); *Prichitt v. Kirkman*, 2 Tenn. Ch. 390, 393 (1875). Accordingly, they limited their role to deciding "legal controversies." *White v. Kelton*, 144 Tenn. 327, 335, 232 S.W. 668, 670 (1921). A proceeding qualifies as a "legal controversy" when the disputed issue is real and existing, *see State ex rel. Lewis v. State*, 208 Tenn. 534, 536–37, 347 S.W.2d 47, 48 (1961), and not theoretical or abstract, *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn.2000); *Miller v. Miller*, 149 Tenn. at 474, 261 S.W. at 968; *State ex rel. Lewis v. State*, 208 Tenn. at 538, 347 S.W.2d at 48–49, and when the dispute is between parties with real and adverse interests. *Memphis*

*Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn.1974).

Justiciability doctrines assist the courts in determining whether a particular case presents a legal controversy. The justiciability doctrines recognized by Tennessee courts mirror the justiciability doctrines employed by the United States Supreme Court and the federal courts.[3] *Compare* 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3529, at 612 (3d ed. 2008) (hereinafter *"Federal Practice and Procedure"*), *with* Barbara Kritchevsky, *Justiciability in Tennessee, Part One: Principles and Limits*, 15 Mem. St. U.L.Rev. 1, 3 n. 5 (1984). These doctrines include: (1) the prohibition against advisory opinions,[4] (2) standing,[5] (3) ripeness,[6] (4) mootness,[7] (5) the political question doctrine,[8] and (6) exhaustion of administrative remedies.[9]

**III.**

■ This appeal implicates the mootness doctrine. A case must remain justiciable (remain a legal controversy) from the

---

3. Despite the differences between the state and federal constitutions, Tennessee courts have consistently found federal precedents to be helpful in addressing issues of justiciability and have adopted many of the significant components of federal jurisprudence. *See, e.g., Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn.2008); *State v. Drake*, 701 S.W.2d 604, 609 (Tenn.1985); *State ex rel. Lewis v. State*, 208 Tenn. at 536–37, 347 S.W.2d at 48; *State ex rel. Wilson v. Bush*, 141 Tenn. 229, 231, 208 S.W. 607, 608 (1919); *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 339–40 (Tenn.Ct.App.2005); *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn.Ct.App.1994).

4. *State ex rel. Lewis v. State*, 208 Tenn. at 537, 347 S.W.2d at 48.

5. *State v. Harrison*, 270 S.W.3d 21, 27–28 (Tenn.2008); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn.1976).

6. *City of Memphis v. Shelby County Election Comm'n*, 146 S.W.3d 531, 538–39 (Tenn. 2004).

7. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 626 (Tenn.2008); *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 338–39 (1948); *McCanless v. Klein*, 182 Tenn. 631, 636–37, 188 S.W.2d 745, 747 (1945); *State ex rel. Wilson v. Bush*, 141 Tenn. at 233–34, 208 S.W. at 609.

8. *Bredesen v. Tenn. Judicial Selection Comm'n*, 214 S.W.3d 419, 435 (Tenn.2007); *Mayhew v. Wilder*, 46 S.W.3d 760, 773 (Tenn. Ct.App.2001).

9. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d at 838.

time it is filed until the moment of final appellate disposition. *State v. Ely*, 48 S.W.3d 710, 716 n. 3 (Tenn.2001); *Alliance for Native Am. Indian Rights, Inc. v. Nicely*, 182 S.W.3d at 338; 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 2.13(c)(ii), at 261 (4th ed. 2007) (hereinafter *"Treatise on Constitutional Law"*). While the doctrines of standing and ripeness focus on the suit's birth, the doctrine of mootness focuses attention on the suit's death. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice and Procedure* § 3533.1, at 735–37. A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 625; *McCanless v. Klein*, 182 Tenn. at 637, 188 S.W.2d at 747; *McIntyre v. Traughber*, 884 S.W.2d at 137. A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. at 626, 207 S.W.2d at 338–39; *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn.Ct.App.2005); *Massengill v. Massengill*, 36 Tenn.App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

■ There has been much scholarly discussion regarding the doctrinal foundations of the mootness doctrine. In federal courts, the doctrine has been traditionally understood to rest on (1) the "case and controversy" requirements of Article III, Section 2 and (2) the more discretionary doctrines of remedial utility and judicial administration. *See* 1 *Treatise on Constitutional Law* § 2.13(c)(i), at 261; 13B *Federal Practice and Procedure* § 3533.1, at 725. This case does not require us to excavate the legal foundations of the mootness doctrine in Tennessee. In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case.

■ Tennessee courts do not apply the mootness doctrine mechanically. Rather, when the question of mootness is raised, they consider many factors, including the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur. Over time, the courts have recognized several circumstances that provide a basis for not invoking the mootness doctrine. These circumstances include: (1) when the issue is of great public importance or affects the administration of justice,[10] (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review,[11] (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain,[12] and (4) when the defendant voluntarily stops engaging in the challenged conduct.[13] The parties to

---

10. *See, e.g., West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 626; *State v. Rodgers*, 235 S.W.3d 92, 97 (Tenn.2007).

11. *See, e.g., West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 626; *State v. Drake*, 701 S.W.2d at 609; *Alliance for Native Am. Indian Rights, Inc. v. Nicely*, 182 S.W.3d at 340–41; *State v. Montgomery*, 929 S.W.2d 409, 414 (Tenn.Crim.App.1996).

12. *See, e.g., May v. Carlton*, 245 S.W.3d 340, 344 & n. 3 (Tenn.2008); *State v. McClintock*, 732 S.W.2d 268, 272 (Tenn.1987); *State v. McCraw*, 551 S.W.2d 692, 694 (Tenn.1977); *Parton v. State*, 483 S.W.2d 753, 754 (Tenn. Crim.App.1972).

13. *See Robin Media Group, Inc. v. Seaton*, No. 03A01–9704–CH–00146, 1997 WL 760726, at *3–4 (Tenn.Ct.App. Dec.11, 1997) (No Tenn. R.App. P. 11 application filed).

this appeal have joined issue on whether this case matches the first and fourth circumstances. Therefore, we are called upon to determine whether the City's and the County's abandonment of their efforts to condemn the property in which the Lynch LLC owns an interest renders this case moot and, if so, whether the issues in this case are of such great public importance that they should be considered notwithstanding the City's and the County's decision to cease their joint efforts to condemn the property at issue in this case.

### IV.

While this Court has not heretofore considered when a case should be rendered moot because the defendant has voluntarily ceased engaging in allegedly wrongful activity, the United States Supreme Court has addressed the question on many occasions. The Court's decisions reflect a jaundiced attitude about permitting a litigant to cease its wrongful conduct temporarily to frustrate judicial review and then be free to resume the same conduct after the case is dismissed as moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Accordingly, the United States Supreme Court has concluded that, as a general rule, the voluntary cessation of allegedly illegal conduct does not suffice to moot a case. *Friends of the Earth, Inc. v. Laidlaw*

*Envtl. Servs. (TOC), Inc.,* 528 U.S. at 174, 120 S.Ct. 693; *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979).

The United States Supreme Court has not completely ruled out finding mootness based on the voluntary cessation of illegal conduct. The Court has determined that a case may be dismissed as moot when it is absolutely clear that the allegedly wrongful conduct cannot be reasonably expected to recur. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 719, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. at 189, 120 S.Ct. 693. This standard purposely places a heavy burden on the party attempting to convince a court that its voluntary cessation of allegedly illegal conduct has mooted the case. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. at 719, 127 S.Ct. 2738; *County of Los Angeles v. Davis,* 440 U.S. at 644, 99 S.Ct. 1379; *United States v. W.T. Grant Co.,* 345 U.S. at 633, 73 S.Ct. 894. Many states have adopted the United States Supreme Court's approach to assessing the effect of voluntary cessation on mootness.[14]

While there is broad acceptance of these general principles, there appears to be less agreement regarding the application of these principles when the defendant is a government entity or official. While the United States Supreme Court has not ad-

---

**14.** *See, e.g., United Air Lines, Inc. v. City and County of Denver,* 973 P.2d 647, 652 (Colo.Ct. App.1998); *Windels v. Envtl. Prot. Comm'n of Darien,* 284 Conn. 268, 933 A.2d 256, 265–66 (Conn.2007); *Fisch v. Loews Cineplex Theatres, Inc.,* 365 Ill.App.3d 537, 303 Ill.Dec. 10, 850 N.E.2d 815, 818 (2005); *State ex rel. Ind. State Bar Ass'n v. Northouse,* 848 N.E.2d 668, 673–74 (Ind.2006); *Cat's Meow, Inc. v. City of New Orleans ex rel. Dep't of Fin.,* 720 So.2d 1186, 1194 (La.1998); *Havre Daily News, LLC*

*v. City of Havre,* 333 Mont. 331, 142 P.3d 864, 875 & n. 7 (2006); *Tibert v. City of Minto,* 679 N.W.2d 440, 444 (N.D.2004); *State ex rel. Okla. Firefighters Pension and Ret. Sys. v. City of Spencer,* —— P.3d ——, 2009 WL 3103746, at *2 & n. 16 (Okla. Sept. 29, 2009); *Lakey v. Taylor ex rel. Shearer,* 278 S.W.3d 6, 12 (Tex. Ct.App.2008); *All Cycle, Inc. v. Chittenden Solid Waste Dist.,* 164 Vt. 428, 670 A.2d 800, 803 (1995).

dressed this question directly, it seemingly is prepared to place the same burden of persuasion on government parties that it has explicitly placed on private parties. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. at 719, 127 S.Ct. 2738; *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 221–22, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000); *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); *County of Los Angeles v. Davis,* 440 U.S. at 631, 99 S.Ct. 1379; *see also DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (indicating that if mootness arose solely because of voluntary cessation by the government rather than other causes that heightened burden would be applied to the government). In the absence of a definitive decision by the United States Supreme Court, the United States Courts of Appeal have viewed voluntary cessation of allegedly illegal conduct by governmental actors with "more solicitude" than similar conduct by private parties. *Ammex, Inc. v. Cox,* 351 F.3d 697, 705 (6th Cir.2003); *Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988); *see, e.g., Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328–29 (11th Cir.2004);[15] However, the federal circuit courts have been inconsistent in their approach, repeatedly applying the same burden to governmental actors as is applied to private actors. *See, e.g., United States v. Brandau,* 578 F.3d 1064, 1069 n. 2 (9th Cir.2009); *Xing Lin v. Chertoff,* 307 Fed.Appx. 175, 178–79 (10th Cir.2009); *Ouachita Watch League v. Jacobs,* 463 F.3d 1163, 1175 (11th Cir.2006).

We are wary of adopting an approach to mootness through voluntary cessation that treats government litigants and private litigants differently. However, we also recognize the long-standing rebuttable presumption that government officials will discharge their duties in good faith and in accordance with the law. *Mitchell v. Garrett,* 510 S.W.2d 894, 898 (Tenn.1974); *Reeder v. Holt,* 220 Tenn. 428, 435–36, 418 S.W.2d 249, 252 (1967); *Mayes v. Bailey,* 209 Tenn. 186, 192–93, 352 S.W.2d 220, 223 (1961); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734, 775 (Tenn.Ct.App.2001).[16] Like the justiciability doctrines themselves, this presumption arises from the separation of powers provisions in Article II, Sections 1 and 2 of the Constitution of Tennessee.

██ We have determined that the mandates of the Constitution of Tennessee and the interests of the parties are best served by holding that the burden of persuading a court that a case has become moot as a result of the voluntary cessation of the challenged conduct is and remains on the party asserting that the case is moot. However, when the party asserting that the case has become moot based on the cessation of its own conduct is a government entity or official, the court may, if justified by the circumstances of the case, require the opposing party to demonstrate why the proceeding should not be dismissed for mootness.

██ The County and the City have asserted that this litigation has caused them

**15.** This solicitude takes the form of shifting the burden of persuasion that the case is not moot to the plaintiff when a government actor asserts that it has voluntarily ceased engaging in the allegedly illegal conduct. *See, e.g., Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 325 (5th Cir.2009); *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1184 (11th Cir.2007); *Susan J. v. Riley,* 616 F.Supp.2d 1219, 1234 (M.D.Ala.2009).

**16.** As a general matter, courts are more apt to trust public officials than private defendants to desist from future violations. 13C Federal Practice and Procedure § 3533.7, at 333.

to restructure the Highlands Business Park project to exclude the tract of property in which Lynch LLC owns a one-fifth interest. They have represented, without contradiction, that: (1) on February 10, 2009, they filed a notice of voluntary dismissal of their condemnation petition, (2) on February 17, 2009, the Putnam County Commission voted to reconfigure the project, (3) on March 2, 2009, the Cookeville City Council also voted to reconfigure the project, and (4) on March 5, 2009, they obtained two certificates of public purpose and necessity approving the reconfigured Highland Business Part project without the disputed property. Based on this evidence, it is clear that the City and the County will not try again to acquire the disputed property in this case by eminent domain without first obtaining a certificate of public purpose and necessity.

However, the fact that the City and the County have curtailed their efforts to acquire the disputed property in this case does not necessarily mean that they have abandoned their belief that state law permits them to file a petition to condemn property in order to develop an industrial park without first obtaining the certificate of public purpose and necessity required by Tenn.Code Ann. § 13–16–207(f). In answer to questions during oral argument, counsel insisted that cities and counties could, in fact, file petitions to condemn property to develop an industrial park without first obtaining the certificate required by Tenn.Code Ann. § 13–16–207(f).

This answer reflects that while the City and the County have changed their practices for this plaintiff, they have not completely and permanently abandoned the challenged practice. A permanent policy change by a government entity that is not likely to be abandoned once the immediate threat of litigation is passed may very well be sufficient to support a finding of mootness on the ground of voluntary cessation. 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice and Procedure* § 3533.7, at 342–43. However, a policy change merely for an individual plaintiff is not. Based on this assertion, we decline to find that either the City or the County has voluntarily abandoned the conduct that Lynch LLC claims is contrary to the requirements of Tenn.Code Ann. § 13–16–207(f). Therefore, we find that the City and the County have failed to demonstrate that the issues in this case have become moot as a result of their voluntary abandonment of their efforts to condemn the property in which Lynch LLC owns a one-fifth interest.

■■■■ The City's and the County's actions and assurances create a dissonance with regard to the likelihood of recurrence of the allegedly offending conduct as to the individual plaintiff Lynch LLC, which is not likely to again be affected, and others who are likely to be affected. While the status of federal law with regard to the question of whether the conduct must recur as to the same plaintiff when considering voluntary cessation is surrounded by ambiguity, there is some indication that the same plaintiff requirement is being applied in the context of voluntary cessation as it is with the capable of repetition yet evading review exception.[17] Regardless

---

17. *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency,* 581 F.3d 1169, 1175 (9th Cir. 2009) (quoting *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State,* 74 F.3d 1308, 1311 (D.C.Cir.1996)), *vacated on other grounds,* 519 U.S. 1, 117 S.Ct. 378, 136 L.Ed.2d 1 (1996) ("[T]he government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again between the government and the same plaintiff."); *State Highway Comm'n of Mo. v. Volpe,* 479 F.2d 1099, 1106

of the current status of federal law, we share the concern of the Montana Supreme Court regarding defendants rendering a claim moot through voluntary cessation as to a particular plaintiff in litigation while planning on proceeding to engage in the same conduct as to others. *Havre Daily News, LLC v. City of Havre*, 142 P.3d at 875 & n. 7. Where a governmental entity is likely to resume or continue engaging in the allegedly offending conduct as to others but not the plaintiff, we simply do not believe that voluntary cessation provides an adequate basis for rendering the action moot. Simply stated, the government has not ceased its allegedly improper conduct. However, it cannot be ignored that the same plaintiff requirement helps ensure a personal stake that aids in satisfying certain justiciability concerns with proceeding with the case as a justiciable controversy. *See* Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 Geo. Wash. L.Rev. 562, 606 (2009) (hereinafter "Hall"). Thus, in cases where the conduct is likely to recur as to others but not the plaintiff, Tennessee appellate courts should be particularly mindful of whether other prudential concerns such as those addressed in considering whether the public interest exception ap-

plies lead to the conclusion that the case should, nevertheless, be dismissed as moot.

## V.

Tennessee courts have long recognized that, in proper cases, the mootness doctrine does not prevent them from addressing disputed issues of great importance to the public and to the administration of justice. In fact, the public interest exception to the mootness doctrine emerged in 1926, just seven years after this Court first dismissed an appeal for mootness in 1919.[18]

The 1926 case involved a constitutional challenge to a private act mandating free textbooks for Knox County grammar schools. The trial court struck down the statute, and the parties defending the private act appealed to this Court. By the time this Court heard the case, the time for purchasing school books for the 1925 school year had passed. After noting that the appeal would normally be dismissed "under well-recognized rules of practice," the Court held that "the constitutionality of the act was challenged on several grounds, and this attack was sustained by the trial judge, and in this situation it is proper that this court should pass upon the constitutionality of the act in this

(8th Cir.1973) ("[W]hen the actions questioned are those of the government, the mere probability of recurrence must be coupled with a certainty that the impact will fall on the same objecting litigants."); *Comm. to Free the Fort Dix 38 v. Collins*, 429 F.2d 807, 812 (3d Cir.1970) (For voluntary cessation by a governmental entity to not result in dismissal for mootness, "two probabilities—recurrence of the objectionable action and impact on the same objecting litigants-must exist."); Note, *Mootness on Appeal in the Supreme Court*, 83 Harv. L.Rev. 1672, 1682–83 (1970) (The standard "is qualified by the additional requirement that the recurrence bring the same two parties before the Court, so that both parties have a personal stake in the recurrence. Thus, to the probability of recurrence is added the dimension of the probability that,

should recurrence take place, the present challenger will be affected."); *see also Luckie v. E.P.A.*, 752 F.2d 454, 459 n. 7 (9th Cir. 1985); *Germann v. Kipp*, 572 F.2d 1258, 1260 n. 5 (8th Cir.1978); *Halvonik v. Reagan*, 457 F.2d 311, 313 n. 3 (9th Cir.1972).

18. This Court first dismissed an appeal for mootness in *State ex rel. Wilson v. Bush*, 141 Tenn. at 231, 233, 237, 208 S.W. at 608–10. The earliest reported case in which an appeal was dismissed in Tennessee for mootness is *State ex rel. v. Duncan*, 1 Tenn.Ch.App. 334, 348 (1901), *aff'd on appeal without modification* (Tenn. Nov. 13, 1901). Barbara Kritchevsky, *Justiciability in Tennessee, Part Three: Timing*, 16 Mem. St. U.L.Rev. 177, 208 (1986) (hereinafter "Kritchevsky").

case." *State ex rel. Scandlyn v. Trotter,* 153 Tenn. 30, 34, 281 S.W. 925, 926 (1926).

This Court again visited the "public interest" exception to the mootness doctrine in 1945 in a case challenging the validity of an administrative regulation requiring wholesalers of alcoholic beverages to register the brands they sold with the Commissioner of Finance and Taxation. The trial court invalidated the regulation, and the Commissioner appealed to this Court. The wholesaler asserted that the Commissioner's appeal should be dismissed. The Court held that

> while the rule calling for dismissal of cases which become moot pending appeal is applicable when the issues for determination affect only rights and claims personal to the parties, an exception is well recognized when interests of a public character and of importance in the administration of justice generally are involved.

*McCanless v. Klein,* 182 Tenn. at 638, 188 S.W.2d at 747. The Court explained that "[w]here the validity of asserted powers of a governmental agency has been challenged in a court proceeding and the question may arise in the course of administration, the court will not decline to pass on the question merely because the time involved in the particular order challenged has expired." *McCanless v. Klein,* 182 Tenn. at 637, 188 S.W.2d at 747.

The public interest exception to the mootness doctrine, as set forth in *State ex rel. Scandlyn v. Trotter* and *McCanless v. Klein,* provided a broad exception to the mootness doctrine in cases involving governmental entities. However, the Court appeared to narrow the scope of the exception in *State ex rel. West v. Kivett,* 203 Tenn. 49, 308 S.W.2d 833 (1957). This case involved a quo warranto proceeding filed by a district attorney general against a county judge who was convicted of em-

bezzlement. The trial court ruled against the county judge, and the county judge appealed to this Court. However, the county judge died before this Court could hear the appeal. When this Court raised the question of mootness, the county judge's widow asserted that the case was not moot because a favorable ruling could benefit the judge's estate.

Even though the constitutionality of the application of the quo warranto statute to the county judge was at issue and the case involved a question of public interest, the Court determined that case had become "simply academic" as a result of the county judge's death. *State ex rel. West v. Kivett,* 203 Tenn. at 59, 308 S.W.2d at 837. The Court distinguished both *State ex rel. Scandlyn v. Trotter* and *McCanless v. Klein* on the basis that they involved successful trial court challenges to a government agency's performance of continuing public duties that would be left in doubt until definitively settled by the Court. *State ex rel. West v. Kivett,* 203 Tenn. at 58, 308 S.W.2d at 836. Based on the manner in which the Court distinguished *State ex rel. Scandlyn v. Trotter* and *McCanless v. Klein,* one legal scholar concluded that the public interest exception, as set forth in *State ex rel. West v. Kivett,* "allows the appellate courts to hear a case that is moot . . . only when a lower court has found a statute or regulation governing a governmental agency to be unconstitutional and the question of the statute's validity is likely to rise again in the agency's work." Kritchevsky, 16 Mem. St. U.L.Rev. at 218.

During the ensuing years, Tennessee's appellate courts have alternated between the broad and narrow constructions of the public interest exception to the mootness doctrine. On one hand, this Court has held that the public interest exception does not apply to cases involving only rights and claims personal to the parties but does

apply to questions involving "a determination of public rights or interests under conditions which may be repeated in the future." *New Rivieria Arts Theatre v. State ex rel. Davis*, 219 Tenn. 652, 658, 412 S.W.2d 890, 893 (1967); *see also Walker v. Dunn*, 498 S.W.2d 102, 104 (Tenn.1972). However, we have also repeated that the public interest exception is limited to circumstances where "the lower court had held a statute to be unconstitutional and void, impelling the court, in its discretion, to go ahead and determine the constitutional validity of the statute, although the appeal had been rendered moot insofar as the parties' litigants were concerned." *State ex rel. Nelson v. Sims*, 583 S.W.2d 302, 303 (Tenn.1976).

In more recent years, Tennessee's appellate courts have generally invoked the broad construction of the public interest exception to the mootness doctrine embodied in *Walker v. Dunn, New Rivieria Arts Theatre v. State ex rel. Davis*, and *McCanless v. Klein*, rather than the narrow construction in *State ex rel. Nelson v. Sims* and *State ex rel. West v. Kivett*. Most recently, this Court, citing *McCanless v. Klein*, concluded that the case was not rendered moot on appeal because it involved "a question of great public importance which is likely to recur." *City of White House v. Whitley*, 979 S.W.2d 262, 265 n. 8 (Tenn.1998).

■ We take this occasion to resolve the tension between the two contradictory lines of precedent regarding the circumstances warranting the invocation of the public interest exception to the mootness doctrine. The applicability of the public interest exception should not hinge on the action of the trial court. Thus, a decision by a trial court adverse to a government entity or official is not a necessary prerequisite for the invocation of the public interest exception. Accordingly, the holdings on this point in *State ex rel. Nelson v. Sims* and *State ex rel. West v. Kivett* are overruled to the extent that they are inconsistent with this opinion.

■ Our judicial heritage speaks to restraint in addressing issues when the parties do not have a continuing, real, live, and substantial interest in the outcome. Accordingly, as a general rule, Tennessee's appellate courts should dismiss appeals that have become moot regardless of how appealing it may be to do otherwise. However, under "exceptional circumstances where the public interest clearly appears," *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn.Ct.App.1977), the appellate courts may exercise their judgment and discretion to address issues of great importance to the public and the administration of justice. *State v. Rodgers*, 235 S.W.3d at 97. To guide their discretion, the courts should first address the following threshold considerations: (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties;[19] (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice";[20] (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future;[21] and (4)

19. *State v. Copeland*, 226 S.W.3d 287, 304 n. 9 (Tenn.2007); *New Rivieria Arts Theatre v. State ex rel. Davis*, 219 Tenn. at 658, 412 S.W.2d at 893; *McCanless v. Klein*, 182 Tenn. at 638, 188 S.W.2d at 747.

20. *State v. Rodgers*, 235 S.W.3d at 97; *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280–81 (Tenn.2001); *McCanless v. Klein*, 182 Tenn. at 638, 188 S.W.2d at 747.

21. *See City of White House v. Whitley*, 979 S.W.2d at 265 n. 8 (applying the public interest exception where the case presented a question of great public interest that was like-

the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.[22]

■■■ If the threshold considerations do not exclude the invocation of the public interest exception to the mootness doctrine, the courts should then balance the interests of the parties, the public, and the courts to determine whether the issues in the case are exceptional enough to address. In making this determination, the courts may consider, among other factors, the following: (1) the assistance that a decision on the merits will provide to public officials in the exercise of their duties,[23] (2) the likelihood that the issue will recur under similar conditions regardless of whether the same parties are involved,[24] (3) the degree of urgency in resolving the issue,[25] (4) the costs and difficulties in litigating the issue again,[26] and (5) whether the issue is one of law, a mixed question of law and fact, or heavily fact-dependent.[27]

■■■ Had we found that the City's and the County's decision to voluntarily dismiss the condemnation proceeding in this case had rendered the legal issues raised by Lynch LLC moot, we would have concluded that this case meets the requirements for invoking the public interest exception to the mootness doctrine. Our decision rests on a careful analysis of the threshold considerations and factors that we have just discussed.

First and foremost, the issue raised in this case regarding the government's power to take private property by eminent domain transcends the private concerns of the parties and implicates important public rights and the administration of justice. The recognition of the right of property is woven into the fabric of our law. *See State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell,* 733 S.W.2d 89, 96 (Tenn.Ct.App. 1987); *Davis v. Mitchell,* 27 Tenn.App. 182, 234–35, 178 S.W.2d 889, 910 (1943).

ly to recur); *LaRouche v. Crowell,* 709 S.W.2d 585, 588 (Tenn.Ct.App.1985) (holding that "[t]he object sought by affording review in a case otherwise moot, is a clarification of the law that will settle some dispute that is likely to arise in the future").

**22.** *See City of Flagstaff v. Mangum,* 164 Ariz. 395, 793 P.2d 548, 553 (1990); *People v. Roberson,* 212 Ill.2d 430, 289 Ill.Dec. 265, 819 N.E.2d 761, 764 (2004); *Lockhart v. Attorney Gen.,* 390 Mass. 780, 459 N.E.2d 813, 815 (1984); *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 439 (Minn.2002); *Hart v. Dep't of Soc. & Health Servs.,* 111 Wash.2d 445, 759 P.2d 1206, 1208 (1988); *see generally* Hall, 77 Geo. Wash. L.Rev. at 563–64, 569–70.

**23.** *See, e.g., Chapman v. Gooden,* 974 So.2d 972, 989 (Ala.2007); *Phibro Res. Corp. v. State,* 579 So.2d 118, 126 (Fla.Dist.Ct.App. 1991); *Filliung v. Adams,* 387 Ill.App.3d 40, 326 Ill.Dec. 268, 899 N.E.2d 485, 500 (2008); *State v. Hernandez-Lopez,* 639 N.W.2d 226, 234 (Iowa 2002); *Westerman v. Cary,* 125 Wash.2d 277, 892 P.2d 1067, 1072 (1994).

**24.** *See City of White House v. Whitley,* 979 S.W.2d at 265 n. 8; *LaRouche v. Crowell,* 709 S.W.2d at 588; *Dockery v. Dockery,* 559 S.W.2d at 955.

**25.** *See, e.g., Hamot v. Telos Corp.,* 185 Md. App. 352, 970 A.2d 942, 949–50 (2009); *Ne. Okla. Elec. Coop., Inc. v. State ex rel. Corp. Comm'n,* 808 P.2d 680, 683 (Okla.1991); *Sloan v. Friends of Hunley, Inc.,* 369 S.C. 20, 630 S.E.2d 474, 478 (2006); *In re Elliott,* 74 Wash.2d 600, 446 P.2d 347, 357 (1968).

**26.** *Cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. at 191–92, 120 S.Ct. 693 (noting that "by the time mootness is an issue, the case has been brought and litigated, often ... for years. To abandon the case at an advanced stage may prove more wasteful than frugal.").

**27.** *See Alaska Ctr. for Env't v. Rue,* 95 P.3d 924, 930 (Alaska 2004); *Rath v. City of Sutton,* 267 Neb. 265, 673 N.W.2d 869, 882 (2004); *De Rose v. Byrne,* 139 N.J.Super. 132, 353 A.2d 100, 101 (1976).

This Court has described the private possession of property as a "sacred right," *Stratton Claimants v. Morris Claimants*, 89 Tenn. 497, 513, 15 S.W. 87, 90 (1891) (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 358 (5th ed., Little, Brown & Co. 1883)), and has held that it includes "the right and interest a man has in lands and chattels to the exclusion of others." *Watkins v. Wyatt*, 68 Tenn. 250, 255 (1877); *see also Townsend v. Townsend*, 7 Tenn. (1 Peck) 1, 17 (1821).

The right to possess private property is also recognized and protected by Article I, Section 8 of the Constitution of Tennessee and by the Fifth and Fourteenth Amendments to the United States Constitution. Of particular application to this case, the framers of our Constitution also limited the power of the government to exercise its power of eminent domain by providing in Article I, Section 21 that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

Second, the requirement in Tenn.Code Ann. § 13–16–207(f) that the government obtain a certificate of public purpose and necessity before acquiring private property for the purpose of developing an industrial park has not been subject to judicial review or construction. Developing an industrial park is a complex, laborious, and expensive process, not only for the government entities involved, but for the affected property owners and the persons who favor and oppose the project. Authoritatively deciding when the certificate required by Tenn.Code Ann. § 13–16–207(f) must be obtained will assist the public officials in the discharge of their statutory duties and will eliminate the delay and expense associated with continuing uncertainty regarding this issue.

Third, there is a substantial probability that conduct similar to that which gave rise to the dispute in this case will recur. The lawyers representing the City and County have stated that their clients believe that they may commence condemnation proceedings without first obtaining the certificate required by Tenn.Code Ann. § 13–16–207(f) and that they could continue to do so unless this Court construes the statute otherwise. It is also not unreasonable to suppose that other local governments will, for their convenience, construe Tenn.Code Ann. § 13–16–207(f) just as the City and County have should we dismiss this case as moot. Because local governments frequently exercise their eminent domain power, providing a definitive construction of Tenn.Code Ann. § 13–16–207(f) now is preferable to leaving the construction of the statute unsettled.

Finally, the issue regarding the interpretation of Tenn.Code Ann. § 13–16–207(f) is a question of law. The parties have honed their positions and arguments through active litigation in the trial court. The current record contains all that is required to address the issue fully and definitively.

## VI.

■ The substantive issue raised by this appeal involves the timing for obtaining a certificate of public purpose and necessity for the development of an industrial park. Tenn.Code Ann. § 13–16–207(f) provides in pertinent part that "[b]efore a city or county may undertake to exercise the power of eminent domain for development of an industrial park, it must obtain a certificate of public purpose and necessity . . . even if no funds will be borrowed for the project." Lynch LLC asserts that the statute required the condemnor to obtain

the certificate before filing the condemnation petition. The City and the County respond that the statute requires only that the condemnor obtain the certificate before the entry of the order of condemnation and, therefore, that a condemnor may file a condemnation petition without first obtaining the certificate. We have determined that Lynch LLC's construction of Tenn.Code Ann. § 13–16–207(f) is correct.

■■■■■ The cardinal canon of statutory construction requires the courts to ascertain and to carry out the General Assembly's intent. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d at 836. A statute's intent is reflected in the statute's words, and, therefore, we must focus initially on the words of the statute. *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn.2008). When the words of the statute are clear and unambiguous, we need not look beyond the statute, but rather, we must simply enforce the statute as it is written. *Green v. Green*, 293 S.W.3d 493, 507 (Tenn.2009); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn.2009).

Tenn.Code Ann. § 13–16–207(f) requires condemnors to obtain the certificate of public purpose and necessity "before . . . undertak[ing] to exercise the power of eminent domain for development of an industrial park." Ascertaining the meaning of this language does not require us to consult dictionaries or resort to canons of construction. A local government "exercises" its eminent domain power when it files a complaint in court seeking to condemn private property. Thus, the plain, common sense interpretation of Tenn.Code Ann. § 13–16–207(f) requires a local government to obtain the required certificate before filing its complaint.

The City and County disagree with this common sense interpretation of Tenn.Code Ann. § 13–16–207(f) by pointing to the voluminous information they are required to provide to the Building Finance Committee of the Department of Economic and Community Development in order to obtain a certificate of public purpose and necessity. They insist that this information will be easier to obtain after the condemnation complaint is filed, giving them access to the property. We do not necessarily disagree with the City and County on this point. However, administrative convenience does not trump plain statutory meaning. We must presume that the General Assembly meant what it said. *Green v. Green*, 293 S.W.3d at 507. The clear import of the words chosen by the General Assembly is to require local governments to obtain the certificate required by Tenn. Code Ann. § 13–16–207(f) before they file their condemnation action.

## VII.

We find that the trial court erred by denying Lynch LLC's motion to dismiss the City's and the County's original condemnation complaint, as well as by granting the City's and the County's motion to withdraw their voluntary dismissal of the complaint in order to assert a counterclaim to Lynch LLC's motion for attorney's fees. Because the City's and the County's condemnation actions should have been dismissed, the trial court also erred by consolidating them with the Lynch LLC's petition for partition in kind, for an accounting, and for damages. Further, because the City and the County abandoned their efforts to condemn the property, the trial court erred by failing to award Lynch LLC its reasonable attorney's fees as required by Tenn.Code Ann. § 29–17–912(b)(2).

Accordingly, we reverse the orders of the trial court and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the

costs of this appeal, jointly and severally, to Putnam County and the City of Cookeville.