# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 9, 2019 Session

## CARY MELTON ET AL. v. CITY OF LAKELAND TENNESSEE ET AL.

**Appeal from the Chancery Court for Shelby County**
No. CH-17-1772    Walter L. Evans, Chancellor

_____

### No. W2018-01237-COA-R3-CV

_____

This appeal involves the dismissal of a case based on mootness. The City of Lakeland and its Industrial Development Board passed various resolutions for the purpose of funding the construction of a new high school. Plaintiffs—a group of citizens of Lakeland—sued, arguing that the city lacked the statutory authority for the financing transaction. After Congress enacted the federal Tax Cuts and Jobs Act, the financing transaction increased in cost, and Lakeland and the Industrial Development Board repealed the resolutions. Thereafter, upon Lakeland's motion to dismiss, the trial court dismissed Plaintiffs' claims as moot. We affirm

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which, JOHN W. MCCLARTY, and KENNY ARMSTRONG, JJ., joined.

Robert L. J. Spence, Jr. and Bryan M. Meredith, Memphis, Tennessee, for the appellants, Cary Melton, Lillie Melton, James D. Abbott, William T. Mallard, Brian Tipler, Deborah Tipler, Christopher J. Smith, Melissa K. Smith, Heather Long, and James L. Murray, Jr..

Chris Patterson and Will Patterson, Memphis, Tennessee, for the appellee, City of Lakeland, Tennessee.

Jeffrey C. Smith, Memphis Tennessee, for the appellee, Industrial Development Board of the City of Lakeland, Tennessee.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Because there is no city high school in Lakeland, Tennessee, most high school-aged children residing in the area attend the neighboring Arlington High School. In 2014, the City of Lakeland ("the City") notified its residents that it intended to issue $50,000,000 in general obligation bonds for the construction of a new school, grades 6-12. In December 2014, a group of citizens requested a referendum be placed on the ballot regarding whether or not the City should issue the bonds for the construction of the school, and, on April 16, 2015, the City held a special referendum. The referendum failed when approximately 60% of the voters voted against the issuance of the bonds.

On December 5, 2017, the City's Board of Commissioners ("BOC") and its Industrial Development Board ("IDB") each held special meetings and passed resolutions (the "December Resolutions") approving the issuance of Series 2017 Public Improvement Bonds by the IDB in an amount not to exceed $60,000,000 for the construction of a new high school and to make improvements to the City's middle school. A summary of the financing transaction is as follows:

1. The School Board would transfer to the IDB certain real property where the city middle school is located and where the new high school would be constructed.
2. The IDB would issue the bonds, a portion of which would be used to improve the middle school and the remainder to construct the high school.
3. The IDB would lease the high school and the school property to the City.
4. The IDB would use the lease payments from the City to pay the IDB bond debt.
5. The City would sublease the high school and school property to the School Board to operate the high school and the middle school.

(hereinafter the "Bond Transaction").

After the BOC and the IDB passed the December Resolutions, Plaintiffs, on December 8, 2017, filed the underlying lawsuit in the Shelby County Chancery Court (the "trial court"). Plaintiffs argued that the Bond Transaction was unlawful because it made the City liable for the payment of the bonds and that the BOC and the IDB had impermissibly pledged the full faith and credit and the unlimited taxing authority of the City without a referendum in violation of Tennessee Code Annotated section 7-53-306. On December 12, 2017, the City and the IDB (together, "Defendants") filed a joint motion to dismiss, arguing that the City did not pledge to be liable for the bond payments but rather the lease payments to the IDB, which they contended is specifically authorized pursuant to Tennessee Code Annotated section 7-53-311. The trial court denied Defendants' motion on December 19, 2017.

Following the trial court's ruling on Defendants' motion to dismiss, the federal Tax Cuts and Jobs Act was enacted, amending the IRS tax code and—according to Defendants—rendering the Bond Transaction unworkable due to the increase in cost.[1] In response, Defendants, on February 13 and 23, 2018, passed additional resolutions (the "February Resolutions") formally repealing the December Resolutions and the associated Bond Transaction. On March 14, 2018, Defendants filed a joint motion to dismiss or, in the alternative, for summary judgment, arguing that, with the repeal of the December Resolutions, Plaintiffs' claims were moot. The trial court entered its final order on June 5, 2018, granting Defendants' joint motion to dismiss on the basis that the action before it was moot. Plaintiffs timely filed this appeal.

## ISSUE PRESENTED

As we perceive it, there is one dispositive issue on appeal: whether the trial court erred in dismissing the underlying action as moot.

## STANDARD OF REVIEW

The issue of whether the trial court erred in dismissing the case for mootness is one of law, and thus our standard of review is de novo with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005) ("Determining whether a case is moot is a question of law[.]").

## DISCUSSION

The Tennessee Supreme Court in *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County* discussed the doctrine of mootness and its exceptions as follows:

> Tennessee courts do not apply the mootness doctrine mechanically. Rather, when the question of mootness is raised, they consider many factors, including the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur. Over time, the courts have recognized several circumstances that provide a basis for not invoking the mootness doctrine. These circumstances include: (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade

---

[1] Specifically, the changes to the federal tax code prevented local governments from refinancing existing debt on a tax-exempt basis. Because the December Resolutions were predicated on the tax-exemption, they were effectively nullified by the change in the federal tax code. Defendants state in their brief on appeal—acknowledged by Plaintiffs in their reply brief—that "[f]inancing costs alone were projected to increase by approximately $1.37 million if the deal did not close before the end of 2017."

judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 204 (Tenn. 2009) (internal footnotes omitted). Here, in dismissing the Plaintiffs' complaint, the trial court concluded that

> [i]t appears to the Court now that the action to prevent the issuance of the 60 million dollars in public improvement bonds is dead. And, of course, it's a possibility that some other act might be resurrected in the future. But the Court cannot speculate and premise its decision based on what may or may not happen in . . . the future.

Plaintiffs, however, argue on appeal that, while the underlying issue may be moot, "the trial court erred in applying mootness without considering the public importance and the voluntary cessation of challenged conduct exceptions to the mootness doctrine." We address each exception in turn.

In discussing the voluntary cessation exception to the mootness doctrine, the *Norma Faye* Court noted that, while it had never considered the issue, the United States Supreme Court's decisions "reflect a jaundiced attitude about permitting a litigant to cease its wrongful conduct temporarily to frustrate judicial review and then be free to resume the same conduct after the case is dismissed as moot." *Id.* at 205 (citations omitted). Accordingly, "as a general rule, the voluntary cessation of allegedly illegal conduct does not suffice to moot a case." *Id.* (citations omitted). Plaintiffs assert that Defendants' repealing the December Resolutions—and the associated Bond Transaction—constitutes the voluntary cessation of allegedly unlawful conduct. We disagree.

In *Norma Faye*, the City of Cookeville, Tennessee and Putnam County filed an eminent domain action against a landowner but failed to obtain a certificate of public purpose and necessity as required by Tennessee law. *Id.* at 200. After the Tennessee Supreme Court granted the landowner's application for extraordinary appeal, Cookeville and Putnam County abandoned their efforts to condemn the property, reconfigured their plans to exclude the landowner's property, and asked the Supreme Court to dismiss the landowner's appeal as moot. *Id.* at 202. The Supreme Court, however, denied such request:

> [T]he fact that the City and the County have curtailed their efforts to acquire the disputed property in this case does not necessarily mean that they have abandoned their belief that state law permits them to file a petition to condemn property . . . without first obtaining the certificate of

public purpose and necessity required by Tenn. Code Ann. § 13-16-207(f). In answer to questions during oral argument, counsel insisted that cities and counties could, in fact, file petitions to condemn property to develop an industrial park without first obtaining the certificate required by Tenn. Code Ann. § 13-16-207(f).

This answer reflects that while the City and the County have changed their practices for this plaintiff, they have not completely and permanently abandoned the challenged conduct . . . . Therefore, we find that the City and the County have failed to demonstrate that the issues in this case have become moot as a result of their voluntary abandonment of their efforts to condemn the property in which Lynch LLC owns a one-fifth interest.

*Id*. at 207. The facts of the present case, however, can be distinguished from those of *Norma Faye*. There, Cookeville and Putnam County explicitly stated that they believed it was unnecessary to acquire a certificate of public purpose and necessity—a blatant contravention of the requirements of Tennessee Code Annotated section 13-16-207(f). Accordingly, the Supreme Court knew with reasonable certainty that when Cookeville and Putnam County condemned a piece of property in the future, they would again fail to acquire the certificate as required by Tennessee law. Here, however, Defendants have not indicated that they plan to engage in the allegedly unlawful conduct in the future.[2] Moreover, while Plaintiffs may presume that the construction of the high school will be funded by the issuance of bonds, this Court cannot speculate as to the intricacies of a hypothetical bond transaction and whether or not it will comply with Tennessee law. Additionally, Defendants did not abandon or voluntarily cease their allegedly unlawful conduct; rather, Congress' enactment of the Tax Cuts and Jobs Act rendered the Bond Transaction unworkable. As such, the changes in the federal tax code—not any act by Defendants—effectively nullified the Bond Transaction. This is significant because, as noted by the *Norma Faye* Court, the rationale behind the voluntary cessation exception to the mootness doctrine is to prohibit a litigant from *temporarily* ceasing its wrongful conduct in order to frustrate judicial review, only to resume such conduct after the case has been dismissed as moot. *See id.* at 205. Here, Defendants did not "temporarily cease" their allegedly unlawful conduct to frustrate judicial review, and whether they will "resume such conduct" is entirely speculative since it was predicated on the federal tax code. Accordingly, we conclude that the voluntary cessation exception to the mootness doctrine is inapplicable.

_____

[2] As evidence of Defendants' intent to engage in the allegedly unlawful conduct in the future, Plaintiffs assert that, even at the time of the trial court's dismissal of the case, Defendants "continued to publicly advertise on its municipal website that the construction of the high school, which must be funded by the issuance of bonds, will proceed[.]" The website, however, simply states that "Lakeland Prep High School is scheduled to open in 2020." There is no indication of how Defendants plan to finance the construction of the high school.

In *Norma Faye*, the Tennessee Supreme Court also addressed the public interest exception to the mootness doctrine. There, the Court stated that, "as a general rule, Tennessee's appellate courts should dismiss appeals that have become moot regardless of how appealing it may be to do otherwise." *Id*. at 210. However, "under 'exceptional circumstances where the public interest clearly appears,' the appellate courts may exercise their judgment and discretion to address issues of great importance to the public and the administration of justice." *Id.* (quoting *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977)). To guide their discretion, the courts should first address the following threshold considerations:

> (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue had not been effectively addressed in the earlier proceedings.

*Id*. at 210-11. Here, Plaintiffs assert on appeal that the threshold considerations support the application of the public interest exception. However, we conclude that the public interest exception is inapplicable for the same reasons the voluntary cessation exception is inapplicable.

The *Norma Faye* Court invoked the public interest exception because it found that there was a "substantial probability" that the challenged conduct would re-occur. *Id*. at 212. In the present case, however, any new bond transaction will have an entirely different makeup, and we cannot speculate as to whether that transaction—which is currently non-existent—will comply with Tennessee law.[3] In short, as counsel for the IDB stated during the hearing on Defendants' joint motion to dismiss, "[w]e don't know what [a new bond transaction] might look like as we sit here today." Moreover, given the current status of federal law, there is no indication that a similar bond transaction will re-occur in the near future or ever.[4] Plaintiffs also assert that "this case involves an important public issue: the legality of a Bond Transaction that will obligate the taxpayers of Lakeland to pay for the largest debt obligation in their history." While it may have been an important public issue prior to 2018, the Bond Transaction at issue is no longer in existence; therefore, the taxpayers of Lakeland are not "obligated" to pay for the

---

[3] As Defendants noted at the trial court's hearing on their joint motion to dismiss, if there is a new bond transaction entered into between Defendants, "there will have to be public meetings, votes and documents will have to be drafted, bond counsel retained and many, many things have to happen before there is a bond transaction that could be effectuated."

[4] Indeed, the December Resolutions were repealed because the federal Tax Cuts and Jobs Act rendered the Bond Transaction unworkable due to the increase in cost.

"largest debt obligation in their history" due to the simple fact that there *is not* a debt obligation. Accordingly, we conclude that the public interest exception to the mootness doctrine is inapplicable.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.


_____
ARNOLD B. GOLDIN, JUDGE