# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 10, 2013 Session

## LISA HOWE, ET AL. v. BILL HASLAM, as Governor of the State of Tennessee, in his official capacity

### Direct Appeal from the Chancery Court for Davidson County
No. 11-778-II     Carol L. McCoy, Chancellor

### No. M2012-01444-COA-R3-CV - Filed June 26, 2013

Plaintiffs filed a complaint asserting a constitutional challenge to HB600.  The trial court, however, dismissed the complaint because it found Plaintiffs lacked standing because they had failed to allege an injury-in-fact, that their claims were not ripe for review, and that they were merely seeking an advisory opinion.  Plaintiffs timely appealed to this court.  However, we dismiss the appeal for lack of subject matter jurisdiction, and we remand the case to the trial court for resolution of Plaintiffs' Motion and Memorandum to Amend Complaint and for further proceedings, as necessary, consistent with this opinion

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Dismissed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Abby R. Rubenfeld, Nashville; Shannon P. Minter, Amy Whelan, Christopher Stoll, San Francisco, CA; James E. Hough, Leah Andrea Ramos, Benjamin Smiley, New York, NY, for the appellants, Lisa Howe, Erik Cole, Erica Gilmore, Mike Jameson, Shirit Pankowsky, Marisa Richmond, Wesley Roberts, The Tennessee Equality Project, and The Tennessee Transgender Political Coalition

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, Adam B. Futrell, Assistant Attorney General, William J. Marrett, Jr., Senior Counsel, Nashville, Tennessee, for the appellee, Bill Haslam, as Governor of the State of Tennessee, is his official capacity

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

On June 13, 2011, Lisa Howe, Erik Cole, Erica Gilmore, Mike Jameson, Shirit Pankowsky, Marisa Richmond, Wesley Roberts, The Tennessee Equality Project and The Tennessee Transgender Political Coalition (collectively "Plaintiffs") filed a Complaint for a declaratory judgment in the Davidson County Chancery Court challenging the constitutionality of Senate Bill 632/House Bill 600 ("HB600"), claiming that it violated the equal protection guarantees of the United States and Tennessee Constitutions.

According to Plaintiffs' Complaint,[1] "immediately after" Belmont University soccer coach plaintiff Lisa Howe "c[ame] out" as a lesbian to her team, the "mutual decision" was made to end her employment with the university. In response to the "public furor" following Ms. Howe's departure, the Nashville Metropolitan Council ("Metro Council") proposed an amendment to a local ordinance which would prevent contractors doing business with the Nashville Metropolitan Government from discriminating based upon sexual orientation and gender identity. The ordinance, No. BL2011-838 (the "Nashville ordinance") which was introduced on January 18, 2011, provided in part:[2]

> It is declared to be the policy of the metropolitan government that any person
> contracting for building and construction projects or furnishing supplies or
> services to the metropolitan government, and to which any funds of the
> metropolitan government are expended, shall establish equal employment

---

[1]Because this case was resolved, in part, for failure to state a claim, the facts recited in this opinion are taken from the Complaint, which must be accepted as true at this stage of the proceedings. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

[2]The preamble to the Nashville ordinance further stated:
WHEREAS, on September 9, 2009, the Council of the Metropolitan Government of Nashville and Davidson County enacted Ordinance No. BL2009-502 to make it unlawful for the Metropolitan Government to fail or refuse to hire or promote, or to discharge any individual, because of such individual's race, religion creed, gender, gender identity, sexual orientation, national origin, color, age, and/or disability; and
WHEREAS, based on recent events concerning the employment practices of a particular Metropolitan Government contractor, it is the desire of the Metropolitan Council that the Metropolitan Procurement Code be revised to prohibit discrimination based upon sexual orientation and gender identity.
**Ordinance No. BL2011-838**, *available at:*
http://www.nashville.gov/mc/ordinances/term_2007_2011/bl2011_838.htm.

opportunities for all individuals so that no individual shall be excluded from employment by such person because of race, creed, color, national origin, age, sex, *gender identity, or sexual orientation,* and to ensure compliance with all applicable laws concerning the employment of individuals with disability.

**Ordinance No. BL2011-838**, *available at* http://www.nashville.gov/mc/ordinances/term_20 07_2011/bl2011_838.htm. (emphasis added).

According to Plaintiffs' Complaint, shortly after the Nashville ordinance was introduced, the Family Action Council of Tennessee, an organization which attempts to promote traditional family values, held a private meeting on January 12, 2011[3] to establish a plan to overturn the ordinance. The meeting was attended by, among others, State Representative Glen Casada and State Representative-elect Jim Gotto, and "just days" after the meeting, Rep. Casada introduced HB600.

The Metro Council passed the Nashville ordinance on April 8, 2011. Shortly thereafter, HB600 was passed by the General Assembly, and the bill was signed into law on May 23, 2011. The new law added Tennessee Code Annotated section 7-51-1802, known as the "Equal Access to Intrastate Commerce Act[,]" and it provided in relevant part:

(a)(1) No local government shall by ordinance, resolution, or any other means impose on or make applicable to any person an anti-discrimination practice, standard, definition, or provision that shall deviate from, modify, supplement, add to, change, or vary in any manner from:

(A) The definition of "discriminatory practices" in § 4-21-102[4] or deviate from, modify, supplement, add to, change, or vary any term as used in such definition and also as defined in such section[.]

. . . .

(2) Any such practice, standard, definition, or provision imposed or made

---

[3]These incongruous dates are taken from Plaintiffs' Complaint.

[4]Section 4-21-102(4) of the Tennessee Human Rights Act defines "discriminatory practices" as "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin[.]"

-3-

applicable to any person by a local government prior to May 23, 2011, shall be null and void.

The new law also created a definition for the term "sex" as used in the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-102(20):

"Sex" means and refers only to the designation of an individual person as male or female as indicated on the individual's birth certificate.[5]

As stated above, in their Complaint, Plaintiffs alleged that HB600 violated equal protection guarantees. Specifically, they argued that HB600 (1) nullified existing local anti-discrimination laws and prevented any such future laws; (2) nullified and prevented future anti-bullying school policies; and (3) by defining "sex," excluded transgender individuals from the protection of all sex discrimination laws. Governor Bill Haslam filed his Answer to Plaintiffs' Complaint on July 13, 2011. In his Answer, Governor Haslam maintained the constitutionality of HB600 and, alternatively, he claimed that Plaintiffs lacked standing to prosecute the claims asserted because they had failed to allege a distinct and palpable injury, that they had failed to set forth an actual case or controversy, and that they had failed to state a claim upon which relief could be granted.

Discovery ensued, and a hearing was held in October 2011 to consider the enforceability of subpoenas issued against non-parties to the case. In a January 25, 2012 Memorandum and Order, however, the trial court found it unnecessary to address the subpoena issue,[6] because it found the case non-justiciable due to a lack of standing, a lack of ripeness, and Plaintiffs' pursuit of a merely advisory opinion. Specifically, the trial court stated, "No party has claimed an injury beyond potential discrimination, and potential loss of political and litigious opportunities. In addition, there is no suggestion that the LGBT community has been deprived of any legal right, such that its members would be specifically restrained by virtue of their identity." Acknowledging that justiciability had not been argued at the October 2011 hearing, the trial court invited the parties to file a motion to seek relief from the order. Plaintiffs did so, but the motion was denied in a June 25, 2012 Order as follows:

Having heard and considered the arguments of the parties in their brief

_____

[5]Tenn. Code Ann. § 68-3-203(d) further provides, "The sex of an individual shall not be changed on the original certificate of birth as a result of sex change surgery."

[6]However, in its Memorandum and Order, the trial court also stated that it found "the enforcement of the subpoenas would impose a severe hardship upon the nonparties to the litigation[.]"

-4-

and oral arguments, the Court finds that Defendant's arguments are well taken and hereby denies Plaintiffs['] Motion for Relief. The Court finds no justiciable question is before it in this matter in that none of the Plaintiff[]s had standing. None of the . . . Plaintiffs alleged an injury-in-fact cognizable by law. Nor have any of the Plaintiffs stated a claim that is ripe for review. This Court cannot and will not issue an advisory opinion. Further, the Plaintiffs fail to state valid claims under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. HB600 is not analogous to the Amendment issue in *Romer v. Evans*, 517 U.S. 620 (1996) and is rationally related to at least one conceivable interest.

The trial court dismissed Plaintiffs' Complaint, and they timely sought review by this Court.

## II. ISSUES PRESENTED

Appellants present the following issues for review, as summarized:

1.   Whether the trial court erred in finding the case non-justiciable; and

2.   Whether the trial court erred in dismissing Plaintiffs' Equal Protection claims for failure to state a claim.

For the following reasons, we dismiss this appeal.

## III. DISCUSSION

The initial and principal inquiry in this case relates to the justiciability of Plaintiffs' claims. "The doctrines of justiciability, including standing, ripeness, and the prohibition against advisory opinions guide the courts in deciding whether a particular action presents a legal controversy." ***Thomas v. Shelby County***, ---S.W.3d ----, 2011 WL 3558171, at *3 (Tenn. Ct. App. W.S. Aug. 12, 2011) (citing *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d 196, 203 (Tenn. 2009)). These interrelated doctrines have been previously explained by this Court as follows:

It is well-settled that the role of the court is to adjudicate and settle legal rights, not to give abstract or advisory opinions. A matter qualifies as a "legal controversy" when and if there exists a real and disputed issue. Theoretical and abstract questions do not constitute a legal controversy. Rather, [] there must be a real dispute "between parties with real and adverse interests." The determination of whether a matter is ripe for review involves a determination

of "'whether the harm asserted has matured sufficiently to warrant judicial intervention[.]'" Accordingly, the courts will not address an issue that is not ripe for review. Although a showing of a present injury is not required in a declaratory judgment action, a real "case" or "controversy" must nevertheless exist. A lawsuit brought as a declaratory judgment action may be dismissed for lack of ripeness.

The doctrine of standing is used by the court to determine whether a plaintiff is "properly situated to prosecute the action." In order to establish standing, a party must demonstrate (1) that it has suffered an injury which is "distinct and palpable," (2) a causal connection between that injury and the conduct complained of, and (3) "that a favorable decision will redress that injury." "These elements are indispensable to the plaintiff's case[.]"

*Id.* (internal citations omitted).

"The party, and not the merits of the case, is the major focus of a determination of standing." *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 677-78 (Tenn. Ct. App. 2002) (citing *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson County*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992)). As indicated above, this cause of action was instituted by multiple plaintiffs: Lisa Howe, Erik Cole, Erica Gilmore, Mike Jameson, Shirit Pankowsky, Marisa Richmond, Wesley Roberts, The Tennessee Equality Project and The Tennessee Transgender Political Coalition. These differently-situated plaintiffs allege varying injuries resulting from the passage of HB600.

In the Complaint, plaintiff Lisa Howe is identified as "a lesbian and a former soccer coach at Nashville's Belmont University, which is a city contractor." Ms. Howe alleges three injuries from the passage of HB600: (1) loss of existing legal protections; (2) exposure to a heightened risk of discrimination; and (3) inability to seek redress at the local level for discrimination.

Plaintiffs Erik Cole, Erica Gilmore, and Mike Jameson are members of the Metro Council, and Plaintiffs Gilmore and Jameson co-sponsored the Nashville ordinance. These plaintiffs claim as injury, that "HB600 severely curtails the[ir] ability . . . to represent and advocate for all of their constituents, including those who are vulnerable to discrimination based on their sexual orientation or gender identity and on other bases not covered by state law, such as veteran status or disability."

Plaintiff Shirit Pankowsky is identified in the Complaint as a rising senior at Martin

-6-

Luther King, Jr. High School, a public academic magnet school in Davidson County, and the president and founder of the school's Gay/Straight Alliance. Plaintiff Pankowsky claims that HB600, by limiting the term "discriminatory practices" to its definition set forth in the Tennessee Human Rights–which does not include gender identity or sexual orientation-based discrimination–voided protections previously guaranteed by the Metropolitan Nashville Public Schools' Policy on Bullying and Harassment, which stated:

> The Administration of the Metropolitan Nashville Public Schools is committed to providing all students a learning environment free from bullying or harassment based on race, color, religion, national origin, handicap/disability, sexual orientation, ancestry, or gender, including gender identity, express and appearance.

**Metropolitan Nashville Public Schools, Bullying and Harassment**, *available at* http://www.policy.mnps.org/AssetFactory.aspx?did=57280. She claims that the loss of this protection "has increased her risk of being bullied, harassed, and discriminated against because of her actual or perceived sexual orientation." Additionally, like plaintiff Howe, she alleges as injury the inability to seek redress at the local level for discrimination.

Plaintiff Dr. Marisa Richmond, a transgender woman, is the president of the Tennessee Transgender Political Coalition which "advocates for gay and transgender equality at the state and local level, including advocating for local laws that prohibit discrimination against transgender people in employment, housing, and other arenas." In the Complaint, Plaintiff Richmond alleges four injuries resulting from HB600: (1) loss of existing legal protections under the Nashville ordinance; (2) inability to seek redress at the local level for discrimination; (3) exposure to a heightened risk of discrimination; and (4) loss of existing legal protections against "sex" discrimination towards transgender persons.

Plaintiff Wesley Roberts is a teacher at Hume-Fogg Academic Magnet School, a Metro public high school, and a co-sponsor of the school's Gay/Straight Alliance. Plaintiff Roberts alleges that "[b]y voiding the inclusion of sexual orientation and gender identity in the Metro public school anti-discrimination policy, HB600 limits [his] ability to protect his students from harassment and discrimination and ensure that they feel safe and included in all school activities." He further claims that HB600 renders futile any efforts to advocate for policies protecting students against sexual orientation or gender identity-related discrimination.

Plaintiff Tennessee Equality Protect ("TEP") "is a statewide non-profit organization dedicated to promoting and sustaining the equality of gay and transgender persons within the State of Tennessee through the establishment of fair and equitable laws protecting their rights

and the elimination of laws that discriminate against them." According to the Complaint, TEP's members include gay and transgender persons, some of whom are employees of Nashville city contractors and/or parents of students in Davidson County and other local school districts. Plaintiff Tennessee Transgender Political Coalition ("TTPC"), led by plaintiff Richmond, is a "Tennessee non-profit organization . . . that educates on and advocates for transgender-related legislation at the federal, state, and local levels[,]" and whose members include gay and transgender Tennesseans. TEP and TTPC allege several injuries: (1) loss of existing legal protections; (2) increased risk of discrimination; (3) inability to seek redress at the local level for discrimination; (4) regarding its transgender members, loss of existing legal protections against "sex" discrimination; and (5) impairment of advocacy efforts.

As stated above, following a hearing concerning subpoenas, the trial court issued a Memorandum and Order on January 25, 2012, in which it found the case non-justiciable due to its conclusion that the Plaintiffs lacked standing and that they were seeking an advisory opinion regarding an unripe claim. The Memorandum and Opinion was not a final judgment; it invited the parties to file a motion to seek relief within thirty days noting that the matter would be dismissed absent a subsequent order granting relief from the trial court's determination therein.

On March 26, 2012,[7] Plaintiffs filed a motion seeking relief from the Memorandum and Order. Additionally, on June 14, 2012, Plaintiffs filed a Motion and Memorandum to Amend Complaint to remove as plaintiffs now-former Metro Council members Erik Cole and Mike Jameson and now-former high school student Shirit Pankowsky, acknowledging that these individuals no longer had standing in the case. The motion also sought to add as a plaintiff the Gay/Straight Alliance of Hume-Fogg Academic Magnet High School ("GSA-HFA").

Following a hearing on June 15, 2012,[8] the trial court entered an Order on June 25, 2012, in which it denied Plaintiffs' request for relief from the Memorandum and Order. The court continued to make an across-the-board finding that Plaintiffs lacked standing because they had failed to allege an injury-in-fact, that their claims were not ripe for review, and that they were merely seeking an advisory opinion. The court then dismissed the case and

---

[7]An Agreed Order was entered extending the deadline by which Plaintiffs were required to seek relief from the Memorandum and Order.

[8]According to Plaintiffs' appellate brief, this hearing was not transcribed.

certified the Order as final pursuant to Tennessee Rule of Civil Procedure 58.[9]

In their brief to this Court, Plaintiffs state that at the June 15, 2012 hearing on Plaintiffs' request for relief from the Memorandum and Order, "Plaintiffs . . . alerted the court to Plaintiffs' Motion and Memorandum to Amend Complaint, which they had filed the previous day[,]" but "[t]he trial court never ruled on that motion." The June 25, 2012 Order does not mention Plaintiffs' request to amend their Complaint to add and remove plaintiffs based upon changed circumstances, and our review of the record has uncovered no ruling by the trial court on such request.

Despite Plaintiffs' acknowledgment that the trial court failed to rule on Plaintiffs' Motion and Memorandum to Amend Complaint, none of the parties has raised the issue of whether Plaintiffs have appealed from a final, appealable judgment. We must, however, *sua sponte*, review the record to determine whether this Court properly possesses appellate jurisdiction. ***Davis v. Shelby County Sheriff's Dept.***, No. W2006-00980-COA-R3-CV, 2007 WL 609159, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 922 (Tenn. Ct. App. 1991)).

Rule 3 of the Tennessee Rules of Appellate Procedure provides that "every *final judgment* entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right." (emphasis added). "A final judgment is 'one that resolves all the issues, in the case, 'leaving nothing else for the trial court to do.'"" ***Watson v. Bradley County School Bd.***, 2011 WL 332669, at *6 (Tenn. Ct. App. Jan. 28, 2011) (quoting *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003)). In the absence of a final judgment, this Court lacks subject matter jurisdiction. ***Id.***

Here, nothing in the record indicates that the trial court ruled on Plaintiffs' Motion and Memorandum to Amend Complaint to add and remove plaintiffs. We decline to hold that its dismissal of Plaintiffs' request to amend the Memorandum and Order or its entry of a final judgment pursuant to *Rule 58* should serve as an implicit denial of Plaintiffs' request to amend. Because Plaintiffs' Motion and Memorandum to Amend Complaint–and the claims asserted by the would-be plaintiffs therein–remains outstanding, we conclude that there is

---

[9]Tennessee Rule of Civil Procedure 58 provides:
Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
(1) the signatures of the judge and all parties or counsel, or
(2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
(3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel. . . .

no final judgment in this case from which Plaintiffs may appeal. ***See Farnsworth v. Kenya***, No. 02A01-9707-CV-00145, 1997 WL 685009, at *1 (Tenn. Ct. App. W.S. Nov. 4, 1997) (dismissing the appeal for lack of a final judgment where the trial court failed to rule on the plaintiff's motion to amend his complaint); *see also Watson*, 2011 WL 332669, at *6-7 (dismissing the appeal for lack of a final judgment where the trial court  failed to rule on the defendants' request for Rule 11 attorney fees); *Davis*, 2007 WL 609159, at *3 (dismissing the appeal for lack of a final judgment where the trial court failed to rule on the plaintiff's motion to amend his complaint).  Without a final judgment, we must dismiss this appeal for lack of subject matter jurisdiction and remand the case for resolution of Plaintiffs' Motion and Memorandum to Amend Complaint.[10]  All other issues necessarily are pretermitted.

---

[10]Because this case was dismissed, in major part, due to a lack of standing, we find the trial court's apparent failure to consider Plaintiffs' motion to amend to add and remove plaintiffs particularly troubling. In their Motion and Memorandum to Amend Complaint, Plaintiffs contended that the modifications sought would not affect the standing qualifications alleged in the Complaint.  Essentially, they argued that former-council-member plaintiffs Cole and Jameson shared the same interest and rights as current-plaintiff and current-council-member Gilmore and that would-be-plaintiff GSA-HFA shared the same interest and rights as would-be-dismissed plaintiff Pankowsky. Respectfully, however, it is the trial court's province to consider whether the proposed amendment would affect the standing issue. ***See, e.g.***, *Davis v. Arnett*, 177 S.W.2d 29 (Tenn. Ct. App. 1942) (finding that the trial court did not err in allowing the addition of a plaintiff where the rights of the defendant were not affected, changed, or prejudiced).   In any event, even assuming *arguendo* that *granting* Plaintiffs' request to amend would not affect standing in the case, the *converse* is not true.  For example, by Plaintiffs' concession, now-graduated plaintiff Pankowsky no longer possesses standing to assert claims, yet her would-be-successor, GSA-HFA, has not been added as a plaintiff to, in essence, assume her claims.

## IV. CONCLUSION

This appeal is dismissed for lack of subject matter jurisdiction. This case is remanded to the trial court for resolution of Plaintiffs' Motion and Memorandum to Amend Complaint and for further proceedings, as necessary, consistent with this opinion. Costs of this appeal are taxed to Appellants, Lisa Howe, Erik Cole, Erica Gilmore, Mike Jameson, Shirit Pankowsky, Marisa Richmond, Wesley Roberts, The Tennessee Equality Project and The Tennessee Transgender Political Coalition, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.