IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 02, 2015


**NONPROFIT HOUSING CORPORATION, ET AL. v. TENNESSEE
HOUSING DEVELOPMENT AGENCY**


**Appeal from the Chancery Court for Davidson County
No. 13856IV      Russell T. Perkins, Chancellor**

_____


**No. M2014-01588-COA-R3-CV – Filed August 27, 2015**
_____


Three non-profit corporations filed suit alleging that they were wrongfully denied low
income housing tax credits.  The trial court determined that the plaintiffs' claims were
moot, and we concur.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**


ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT,
JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

William G. Brown, Andrew E. Hill, and C. Mark Pickrell, Nashville, Tennessee, for the
appellants, Nonprofit Housing Corporation, et al.

Herbert H. Slatery, III, Attorney General and Reporter, and Mary Byrd Ferrara, Assistant
Attorney General, for the appellee, Tennessee Housing Development Agency.


**OPINION**


FACTUAL AND PROCEDURAL BACKGROUND


Nonprofit    Housing    Corporation    ("Nonprofit")    is    a    501(c)(3)[1]    non-profit

---

[1] Section 501(c)(3) of the Internal Revenue Code provides that the following entities are exempt
from taxation:

> Corporations, and any community chest, fund, or foundation, organized and operated
> exclusively for religious, charitable, scientific, testing for public safety, literary, or
> educational purposes, or to foster national or international amateur sports competition

corporation with its principal place of business in Tennessee. The Tennessee Housing Development Agency ("THDA") is a Tennessee governmental agency created pursuant to the Tennessee Housing Development Agency Act, Tenn. Code Ann. § 13-23-101–13-23-133.

## Low Income Housing Tax Credit Program

The Internal Revenue Code establishes a Low Income Housing Tax Credit ("LIHTC") program to apportion tax credits annually to each state based on census data. 26 U.S.C. § 42. Ten percent of each state's total tax credit apportionment is allocated for qualified non-profit developers. 26 U.S.C. § 42(h)(5). The THDA has been designated the "housing credit agency" in charge of distributing Tennessee's tax credits to individual projects. *See* 26 U.S.C. § 42(h)(3)(B). A housing credit agency must make its determinations of eligibility and distribution in accordance with a "qualified allocation plan," or "QAP," which "sets forth selection criteria to be used to determine housing priorities of the housing credit agency which are appropriate to local conditions." 26 U.S.C. § 42(m)(1)(B)(i). Each year, the THDA develops a QAP that incorporates the provisions mandated by federal law. *See, e.g.*, 26 U.S.C. §§ 42(m)(1)(A)(iii), 42(m)(1)(B)(ii), 42(m)(1)(C).

## Current dispute

Nonprofit submitted an LIHTC application to the THDA in 2013 but did not receive tax credits. Nonprofit filed a Complaint and Petition for Judicial Review in chancery court on June 13, 2013 that includes allegations that the THDA made errors in applying the scoring system set forth in the QAP such that Nonprofit lost points for taking advantage of the review process. Nonprofit further alleged that THDA violated the due process clause of the United States Constitution by failing to provide applicants with notice and an opportunity to be heard. Nonprofit also sought a declaratory judgment that the THDA's procedures violated applicants' rights to due process under the Tennessee and United States constitutions. In its prayer for relief, Nonprofit requested a preliminary injunction enjoining THDA from issuing or entering into carryover allocation

---

(but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

agreements or issuing any I.R.S. Form 8609[2] for 2013 tax credits until Nonprofit's case has been adjudicated.

Nonprofit filed a First Amended Complaint and Petition for Judicial Review in August 2013 and added as a plaintiff Sunridge Development Corporation ("Sunridge"), a Tennessee corporation. The complaint alleged that Sunridge submitted an application for a project in Anderson County but was denied full completeness points by the THDA. Anderson Hall Apartments, the successful applicant for Anderson County, was given 21 completeness points for its application although, according to the complaint, Sunridge's application was "substantially similar" to Anderson Hall's. The complaint also alleged that Anderson Hall was given "amenity" points that were "fraudulent." For example, the Anderson Hall project received amenity points for being within two miles of a "community center." The "community center" identified on the application was actually a craft store.

John Rankin, the president of Sunridge, allegedly brought these "fraudulent" amenity points to the attention of Michael Blade, Director and Assistant Legal Counsel for Multifamily Development at THDA. Mr. Blade responded that, regardless of whether Anderson had received points improperly, the matter was now moot because "all review has been done, and once the review meeting of the tax credit committee is adjourned, there is no further review is possible [sic]." The complaint alleged that, had it received "comparable completeness points to the Anderson Hall application, and had Anderson Hall received the correct number of amenity points, Sunridge would have received an allocation of tax credits for its Anderson County project."

In October 2013, the plaintiffs filed a motion for a preliminary injunction preventing THDA from entering into any further allocation agreements with Anderson Hall Apartments and Loudon Hall Apartments; preventing THDA from issuing federal low-income housing forms arising from the 2013 LIHTCP to the developer of the Anderson Hall Apartments and Loudon Hall Apartments; and requiring THDA to rescind its allocation agreements with tax credit recipients who filed fraudulent applications, including the developer of the Anderson Hall Apartments and Loudon Hall Apartments.

In November 2013, the trial court entered an order dismissing without prejudice count two of the Amended Complaint—the declaratory judgment action.[3] The plaintiffs'

---

[2] After the application deadline (in 2013, February 1, 2013), THDA evaluates, scores, and ranks the applications and ultimately allocates the available tax credits via carryover allocation agreements. In 2013, all of the tax credits were allocated as of December 31, 2013. A final application is submitted when the project is complete, usually by the end of two years following the reservation of credits. At that point, an I.R.S. Form 8609 is issued to the developers who received 2013 tax credits.

[3] Count one was the petition for judicial review. The trial court had previously noted that

motion to add another plaintiff, American Housing Preservation Corporation ("American"), was granted.

On December 20, 2013, the plaintiffs filed a Petition for Judicial Review that included all of the factual allegations from the previous amended complaint and added factual allegations regarding American's LIHTC application, which involved a project in Old Hickory, Tennessee. According to the complaint, American did not receive amenity points for being near a fire station, even though a fire station was allegedly within the required distance. Moreover, the plaintiffs alleged that American was denied an opportunity to be heard regarding THDA's scoring decisions.

The plaintiffs' petition for judicial review includes three counts with detailed requests for relief. The first count alleges that the plaintiffs mailed a petition for a declaratory order to the THDA on December 13, 2013; they requested an opinion from the agency regarding specific questions as to the application and interpretation of the QAP. The plaintiffs asked the court to hold the instant case in abeyance until the THDA had time to issue an opinion or declined to act within 60 days. Count two asked that, in the alternative, the court order a contested case hearing pursuant to Tenn. Code Ann. § 4-5-322(a)(1). In count three, another count in the alternative, the plaintiffs requested that the court review THDA's scoring of the 2013 LIHTC program under the QAP criteria.

In January 2014, the Attorney General, on behalf of the THDA, moved to dismiss the case pursuant to Tenn. R. Civ. P. 12.02(1) and (6) for lack of subject matter jurisdiction, failure to state a claim upon which relief could be granted, and ripeness. On February 13, 2014, the trial court entered an order staying the case pending the resolution of the THDA's administrative proceedings. The plaintiffs were given thirty days following the resolution of the administrative proceedings to amend their petition, if necessary.

The plaintiffs filed an Amended Complaint on March 6, 2014. This complaint includes only one count, a declaratory judgment action pursuant to Tenn. Code Ann. § 4-5-225. The plaintiffs requested a declaratory order from THDA regarding a list of questions, but the deadline for setting a contested case hearing in response to the petition passed and the THDA failed to set a contested case hearing.[4] The complaint alleges that the listed rules, orders, and actions violate state or federal law. The plaintiffs request a

combining an original action with a request for judicial review was, "at a minimum, disfavored."

[4] Tennessee Code Annotated § 4-5-223(a) allows an "affected person" to "petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." This is an administrative proceeding, distinct from the declaratory judgment claim included in the plaintiffs' complaint pursuant to Tenn. Code Ann. § 4-5-225.

declaratory judgment regarding the constitutionality or legality of the following THDA rules and actions:

a. Whether THDA's procedures under the 2013 QAP must allow for administrative review of the applications of aggrieved parties in a manner that comports with the contested case proceedings pursuant to Tennessee Uniform Administrative Procedures Act, Tenn. Code Ann. §§ 4-5-301–325, the Due Process Clause of the Fourteen[th] Amendment, and corresponding provision of the Tennessee Constitution. U.S. Const. Amend. 14; Tenn. Const. Art. I., § 8.

b. Whether THDA accurately, evenly, and fairly applied the scoring criteria contained in the 2013 QAP to all applicants and applications to comport with the Equal Protection Clause of the Fourteen[th] Amendment. U.S. CONST. AMEND. 14.

c. Whether THDA can amend the composition of the successful applicants['] list in light of proof of errors in scoring of applications, fraud on certain successful applications, and corresponding violations of Tenn. Code Ann. § 13-23-133.

d. Whether the above-described applications should be rescored to reflect the accurate allocation of "Completeness/Correctness of Initial Application" points based on whether or not applications received a "48 Hour Email" or "Cure Notice" per the terms of the 2013 QAP.

e. Whether the aggrieved parties should have been docked "Completeness/Correctness of Initial Application" points for the failure of the mandated third-party market analyst to include an Executive Summary in the Market Analysis section of the applications despite assurances that applicants would not be penalized for the failures of outside parties.

f. Whether the THDA was within its discretion under the 2013 QAP when it awarded the maximum 21 points for "Completeness/Correctness of Initial Application" to applicants who received a "48 Hour Email" or "Cure Notice" indicating errors in the initial applications.

g. Whether the application "Hillcourt" should have received the maximum 21 points under "Completeness/Correctness of Initial Application" (QAP Part VII-(B)(3)(C)) in spite of receiving both a "48 Hour Email" and a "Cure Notice."

h. Whether the application "Harrison Meadows" should have received the maximum 21 points under "Completeness/Correctness of Initial Application" (QAP Part VII-(B)(3)(C)) in spite of receiving both a "48 Hour Email" and a Cure Notice."

i. Whether the application "Mountain View Apartments" was entitled to 3

5

additional "Amenity Points" for its proximity to a community center when the THDA staff explicitly said it was not.

j. Whether the lack of property control in the "Beasley Pointe Apartments" application is a direct violation of 2013 QAP Part VII-(A)(7)(a)(iii) that should immediately disqualify the application.

k. Whether the application "Anderson Hall Apartments" was entitled to any "Amenity Points" for proximity to a public library, community center, post office, and public park and whether the applicant is in violation of Tenn. Code Ann. § 13-23-133.

l. Whether the application "Stewart Place Apartments" should have received the maximum 21 points under "Completeness/Correctness of Initial Application" in spite of receiving a "Cure Notice."

m. Whether the application "Northside Drive Apartments" should have received the maximum 21 points under "Completeness/Correctness of Initial Application" in spite of receiving a "Cure Notice."

n. Whether the application "Loudon Hall Apartments" should have received the maximum 21 points under Completeness/Correctness of Initial Application" in spite of receiving a "Cure Notice" and whether it was entitled to 6 "Amenity Points" for proximity to a community center.

The amended complaint goes on to request permanent injunctive relief to prevent the THDA from entering into any more allocation agreements with participants in the 2013 LIHTC program "who should not have received tax credits"; to prevent THDA from issuing federal LIHTC forms arising from the 2013 application period to applicants "who should not have received tax credits"; to require THDA to rescind its allocation agreements with tax credit recipients who "filed fraudulent applications, or who otherwise received tax credits unlawfully"; and, to the extent these remedies "do not make the aggrieved parties whole," to require that "the aggrieved parties receive a first-priority allocation of tax credits for future-year LIHTC allocations."

On April 30, 2014, the THDA filed a motion to dismiss the plaintiffs' amended complaint and a supporting affidavit of Mr. Blade (to be discussed more fully below). The THDA moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction on the ground that the issues had become moot and "there no longer exists a justiciable controversy from which the plaintiffs may obtain redress." In the alternative, the THDA moved to dismiss based upon failure to state a claim upon which relief could be granted.

In opposing THDA's motion, the plaintiffs submitted the affidavit of Phyllis Fox Vaughn, a former THDA employee who, since 2002, had worked as a consultant for developers hoping to secure low income tax credits from the THDA.

6

Trial court's decision

After a hearing on May 23 and July 18, 2014, the trial court entered an order on July 30, 2014.  The court concluded that it lacked subject matter jurisdiction "because the claims asserted [in the plaintiffs' amended complaint] have become moot and no longer present an active legal controversy between the parties before the court."  The court found that the plaintiffs failed to satisfy their burden of making a prima facie case of facts establishing jurisdiction.  The court reasoned as follows:

> . . . The Court finds that regardless of the outcome of the legal claims asserted by the Plaintiffs, there is no redress available to them.  As stated by the Defendant and the Affidavit of Phyllis Vaughan which was filed by the Plaintiffs, the court finds that all Low Income Housing Tax Credits have been allocated under the 2013 Qualified Allocation Plan, and that none remain available to be allocated pursuant to the Plaintiffs' 2013 applications or the 2013 Qualified Allocation Plan for allocation of tax credits.  In short, this Court finds that even were Plaintiffs to be successful on the legal theories asserted in the Amended Complaint, no relief is available for the Court to award in this action.  Plaintiffs' contention that the relief sought is the opportunity to apply for and compete for tax credits at some time in the future is speculative and does not impact current existing legal rights of the parties to this action.  As stated in *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994):

>> The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights.  *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977).  Thus, our courts will not render advisory opinions, *Super Flea Mkt. v. Olsen*, 677 S.W.2d 449, 451 (Tenn. 1984); *Parks v. Alexander*, 608 S.W.2d 881, 892 (Tenn. Ct. App. 1980), or decide abstract legal questions. *State ex rel. Lewis v. State*, 208 Tenn. at 538, 347 S.W.2d at 49.

> Plaintiffs' Amended Complaint no longer involves a genuine and existing controversy requiring the present adjudication of present rights and is, therefore, moot.

7

As will be discussed more fully below, the trial court also found that the plaintiffs "did not come forward with any facts to support the 'capable of repetition yet evading review' exception to their claims." The court granted the defendants' motion to dismiss the plaintiffs' amended complaint pursuant to Tenn. R. Civ. P. 12.02(1) for lack of subject matter jurisdiction due to mootness. The court therefore dismissed the plaintiffs' amended complaint with prejudice.

### Issues on appeal

On appeal, the plaintiffs raise the following issues: (1) whether the plaintiffs' case is moot; (2) whether, even if the case is technically moot, the court should adjudicate the case because it falls under the exception for cases of public significance or those "capable of repetition yet evading review"; and (3) whether the trial court erred in finding that the plaintiffs "failed to come forward with any facts establishing that this court has jurisdiction, after having been provided with an opportunity to do so."

### STANDARD OF REVIEW

"Determining whether a case is moot is a question of law." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). We review the trial court's findings of fact de novo, with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Richardson v. Tenn. Assessment Appeals Comm'n*, 828 S.W.2d 403, 407 (Tenn. Ct. App. 1991).

### ANALYSIS

### Mootness

We will address issues (1) and (3) in this section because both pertain to the trial court's determination that the plaintiffs' claims are moot.

The trial court dismissed the plaintiffs' amended complaint pursuant to Tenn. R. Civ. P. 12.02(1) based upon lack of subject matter jurisdiction due to mootness. The plaintiffs assert, *inter alia*, that Tenn. R. Civ. P. 12.02(1) is not the proper procedural ground for a mootness defense. We disagree. Subject matter jurisdiction involves the "'authority of a court to adjudicate a controversy brought before it.'" *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 522 (Tenn. 2006) (quoting *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977)). A court exercises its jurisdiction only when "it is called upon to 'adjudicate a controversy.'" *Id.* (quoting *Kane*, 547 S.W.2d at 560). "[T]he controversy

8

must remain alive throughout the course of litigation, including the appeal process." *Public Emps. for Envtl. Responsibility v. Tenn. Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009 WL 1635087, at *6 (Tenn. Ct. App. June 10, 2009). The court lacks subject matter jurisdiction over a case that has become moot. *See State v. Rodgers*, 235 S.W.3d 92, 97 (Tenn. 2007) ("The mootness doctrine provides that before the jurisdiction of the courts may be invoked, 'a genuine and existing controversy, calling for present adjudication' of the rights of the parties must exist.") (quoting *State ex rel. Lewis v. State*, 347 S.W.2d 47, 48 (Tenn. 1961)); *Public Emps.*, 2009 WL 1635087, at *6-7.

Motions to dismiss under Tenn. R. Civ. P. 12.02(1) "deal with procedural defects apart from the underlying merits of the complaint." *Wilson v. Sentence Info. Servs.*, No. M1998-00939-COA-R3-CV, 2001 WL 422966, at *4 (Tenn. Ct. App. Apr. 26, 2001). Unlike motions pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim, motions to dismiss on jurisdictional grounds are not converted to motions for summary judgment when material factual disputes exist. *Id.* Relying on the Supreme Court case of *Chenault v. Walker*, 36 S.W.3d 45 (Tenn. 2001), which involved personal jurisdiction, this court stated:

> Courts faced with a motion to dismiss for lack of jurisdiction must make some kind of factual resolution allowing the court either to grant or to deny the motion. In the [Tennessee Supreme Court's] words, courts confronted with such motions must "determine whether the evidence in favor of finding jurisdiction is sufficient to allow the case to proceed." *Chenault v. Walker*, 36 S.W.3d at 56.

> In considering the sufficiency of the evidence at the motion to dismiss stage, the trial court must keep in mind that the plaintiff bears the burden of proving facts establishing that the court has jurisdiction. When a defendant has filed affidavits or other competent evidentiary materials challenging the case's underlying jurisdictional facts, the plaintiff may not rely on the complaint but must make a prima facie showing of facts that establish jurisdiction. To do so, the plaintiff may submit affidavits or other helpful evidence. Tenn. R. Civ. P. 43.02; *Chenault v. Walker*, 36 S.W.3d at 56. When evaluating the case at that stage, the trial court "will take as true the allegations of the nonmoving party and resolve all factual disputes in its favor . . . [without crediting] conclusory allegations or draw[ing] farfetched inferences." *Chenault v. Walker*, 36 S.W.3d at 56. In doing so, however, the court does "not make any finding as to whether [the plaintiff's] version of events is, in fact, correct. That will be for the jury to decide if the case goes to trial." *Chenault v. Walker*, 36 S.W.3d at 56.

9

*Id.* at *4-5 (footnote omitted).

The ground for lack of subject matter jurisdiction in this case is mootness. The mootness doctrine is rooted in the idea that it is "'the province of a court . . . to decide, not advise, and to settle rights, not to give abstract opinions.'" *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009) (quoting *State v.Wilson*, 70 Tenn. 204, 210 (1879)). Thus, courts limit their role to deciding "'legal controversies.'" *Id.* (quoting *White v. Kelton*, 232 S.W. 668, 670 (Tenn. 1921)). A proceeding constitutes a legal controversy "when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests." *Id.* (citations omitted). To meet their burden of proof, therefore, the plaintiffs must come forward with evidence to establish that this case involved "a present, ongoing controversy." *Alliance*, 182 S.W.3d at 338. A case will be considered moot if it "no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.*

What evidence was submitted for and against the defendant's motion to dismiss? THDA submitted the affidavit of Mr. Blade, who oversaw the LIHTC program, and who stated, in part, as follows:

> 8. Pursuant to U.S. Treasury Regulations (26 C.F.R. § 1.42-6(d)), the 2013 allocation process was complete upon the execution of the Carryover Allocation Agreements.
> 9. For the 2013 process, the issuance of the I.R.S. Form 8609 is not the allocating document.
> 10. If THDA were to be prohibited from issuing I.R.S. Forms 8609 to the developers who received 2013 tax credits, that would not create additional tax credits for the plaintiffs in this lawsuit or for other developers under the 2013 QAP or other future Qualified Allocation Plans.
> 11. If THDA were to be ordered to rescind its allocation agreements with 2013 tax credit recipients, no tax credits would be available to allocate under the 2013 QAP or to award to plaintiffs' 2013 development applications.
> 12. All 2013 tax credits were finally allocated on or before December 31, 2013, and there are no remaining 2013 tax credits. Should any 2013 tax credits be returned to the State of Tennessee for any reason at this time, they would not be available for allocation pursuant to the 2013 QAP or to award to plaintiffs' 2013 development applications.
> 13. The process of reviewing and scoring LIHTC applications, and allocating tax credits according to the 2013 QAP is fully concluded for the

10

2013 tax credits.

14. The Low-Income Housing Tax Credit 2014 Qualified Allocation Plan was approved by the Governor on November 19, 2013, and governs the LIHTC allocation process for 2014. The application deadline for 2014 credits passed on February 3, 2014.

. . .

16. Sunridge Development Corporation did not submit an application for 2013 LIHTC, and has not submitted an application for tax credits for any other year since I have been involved with the allocation process.

The plaintiffs submitted two affidavits of Ms. Vaughn, a former employee of the THDA who worked in the division that administered the LIHTC program. Ms. Vaughn had submitted a public records request to THDA for all of the successful 2013 LIHTC applications. She reviewed these applications and was also familiar with nine unsuccessful applications for which she had served as a consultant. Ms. Vaughn found that the THDA's award of "application points" and "amenity points" was entirely inconsistent and sometimes made the difference in an application being successful or unsuccessful. Ms. Vaughn further stated:

15. . . . Federal regulations require that each applicant who has received an allocation for a given year must spend at least 10% of the investment, which are [sic] the basis for receiving tax credits, during the twelve months after entering into a Carryover Allocation Agreement. . . .

. . .

17. When a developer fails to meet the 10% test, the tax credits that had previously been allocated to him are recaptured by THDA. They may then be used in future years. *So, when tax credits from the 2013 QAP are recaptured, they are available for use in the 2014, 2015 or subsequent years' QAPs.*

18. . . . The plaintiffs in this case would therefore benefit by an increase in the size of future tax credits available, were projects that were part of the 2013 QAP voided.

19. The 10% first-year spending requirement is not the only requirement that can void a project. . . .

20. The 2013 QAP Carryover Allocation Agreements are not the final approvals by THDA for that year. When a project is complete, the developer must file a "Final Tax Credit Application," pursuant to federal regulations. For the 2013 QAP, the Final Tax Credit Application is due before December 1, 2015.

21. When THDA receives a Final Tax Credit Application, THDA must decide whether to approve the application. If the developer fails the one-

year 10% test, or the two-year available-for-occupancy test, or any other requirement . . . , then THDA may not issue tax credits for that project. The allocation, and resulting tax credits, are void. Those tax credits are then recaptured for a future year's QAP.

22. Only after THDA approves a Final Tax Credit Application does THDA issue I.R.S. Form 8609 to the developer. For the 2013 QAP, the process will not be complete for most projects until 2016. While the 2013 QAP process is ongoing, THDA retains full power to void any allocations that were improperly issued, or which otherwise fail to meet federal and State regulations (including the veracity of all prior certifications).

(Emphasis added).

The plaintiffs also cite the deposition of John Rankin, co-owner of Sunridge. He testified that he was familiar with the LIHTC program because he had "some property that a developer applied for tax credits on for low income housing." He owned a twelve-acre parcel of property in Anderson County for which Woda Development had applied for low income tax credits in 2013, but the company was not awarded tax credits. He then investigated the other property in Anderson County that had received the tax credits and discovered that the other project did not actually meet the criteria. Mr. Rankin made an inquiry to Mr. Blade at the THDA by email and received an email back from Mr. Blade stating that the agency staff "uses the utmost care to review the entire application, however, we are not infallible, and we may miss things." Mr. Blade corrected a few factual points, but then concluded:

In the end, all of this is moot as all review has been done, and once the review meeting of the tax credit committee is adjourned, there is no further is possible [sic]. The Qualified Allocation Plan for 2013 stated in Part VIII-C-6, "[n]o matters with respect to eligibility under Part VII-A or with respect to scoring under Part VII-B will be considered after the date of the Review Meeting." The review meeting took place on May 13, 2013.

In their amended complaint, the plaintiffs seek a declaratory judgment regarding the legality or constitutionality of a long list of THDA rules and actions relating to the 2013 QAP, as well as permanent injunctive relief to prevent the THDA from entering into any further "Allocation Agreements with participants in the 2013 federal low-income housing tax credit program ('LIHTCP') who should not have received tax credits"; to prevent the THDA "from issuing federal low-income housing forms (including specifically, without limitation, I.R.S. Form 8609) arising from the 2013 LIHTCP as to applicants who should not have received tax credits"; to require the THDA "to rescind its Allocation Agreements with those recipients of tax credits who filed fraudulent

12

applications, or who otherwise received tax credits unlawfully"; and to require that "the aggrieved parties receive a first-priority allocation of tax credits from future-year LIHTC allocations."

Based upon all of the evidence presented to the trial court and the applicable analytical framework, we agree with the conclusion reached by the trial court: that the case is moot. The answers to the questions raised by the plaintiffs no longer serve as a means of redress because the 2013 LIHT[5] credits have all been allocated and there is no mechanism by which the plaintiffs can receive tax credits under the 2013 applications. The plaintiffs' witness, Ms. Vaughn, testified: "[W]hen tax credits from the 2013 QAP are recaptured, they are available for use in the 2014, 2015 or subsequent years' QAPs." The plaintiffs argue that they should receive "first-priority allocation of tax credits from that future year's tax credit program." We agree with the trial court that, "Plaintiffs' contention that the relief sought is the opportunity to apply for and compete for tax credits at some time in the future is speculative and does not impact current existing legal rights of the parties to this action."[6]

The plaintiffs have not presented a genuine, ongoing controversy for adjudication by the court. *See State v. Rodgers*, 235 S.W.3d at 97. In their first two complaints, the plaintiffs sought to enjoin THDA from proceeding with the process of reviewing and scoring the 2013 tax credit applications, but they failed to pursue injunctive relief in time to prevent the conclusion of the review process and allocation of all 2013 tax credits. Thus, the review process continued and concluded with the final allocation of tax credits on or before December 31, 2013. After that date, 2013 tax credits were no longer available for that year, and none of the relief sought in the plaintiffs' complaint could be granted by the trial court.

The case of *Villas on Blue Mountain, L.P. v. Tennessee Housing Development Agency*, No. M2009-01250-COA-R3-CV, 2010 WL 1539843 (Tenn. Ct. App. Apr. 16, 2010), is similar to the present case. Villas attempted to submit an LIHTC application, but it was rejected as submitted after the deadline on March 19, 2008. *Villas*, 2010 WL 1539843, at *1. The initial decision of the THDA employee not to accept Villas' application was affirmed by the agency's policy and programs committee and its board of directors on March 20, 2008. *Id.* More than five months later, on September 5, 2008, Villas requested that THDA issue a final order regarding its application; THDA's general

---

[5] "LIHT" stands for "low income housing tax."

[6] There is no evidence in the record regarding the 2014 QAP.

counsel wrote a letter stating that the agency had no plans to consider the matter further. *Id.* Two months later, Villas filed a petition for review arguing that the THDA's decision not to accept its application was arbitrary and capricious. *Id.*

The THDA filed a motion for summary judgment arguing that the case was moot because all 2008 applications had been received and all tax credits allocated for that year. *Id.* at *2. The trial court dismissed the case as moot. *Id.* This conclusion was based on the fact that all of the 2008 tax credit applications had been reviewed and all of 2008 tax credits had been allocated, "thus there was no available relief the Court could afford Villas." *Id.* at *3. On appeal, Villas argued that the THDA's disbursement of tax credits in December 2008 was wrongful because it denied Villas the right to have a court review the THDA's actions. *Id.* at *4. The court stated:

> If Villas wanted to stop THDA from distributing the 2008 tax credits until its petition was heard, Villas should have filed its petition earlier and, more importantly, it should have sought injunctive relief. It did neither. Villas offers no explanation, nor does it cite any law, that supports its contention that THDA bore the responsibility of keeping the case justiciable, when Villas failed to make any attempt to do so itself.

*Id.* Similarly, in the present case, the plaintiffs failed to seek an injunction to prevent the QAP process from proceeding, with the result that all of the 2013 tax credits were allocated by December 31, 2013.[7] Thus, none of the relief the plaintiffs requested could be granted to them by the court when they sought it because the case no longer presented a live controversy.

In *Villas*, the plaintiff also argued that the case was not moot because some of the 2008 credits might be returned to the THDA in the future. *Id.* The court responded:

> [I]t is possible that other developers' 2008 tax credits will be returned to THDA between 2008 and 2010. However, the federal law governing the LIHTC program requires that tax credit returned by a developer in a year subsequent to the year the credit was issued be allocated pursuant to the Qualified Allocation Plan in effect in the year in which the tax credit is returned. *See* 26 C.F.R. § 1.42-14. . . . Accordingly, Villas' argument that this case is not moot because 2008 tax credit may be returned in the future and could then be redistributed to Villas pursuant to its 2008 LIHTC application is without merit. Any 2008 tax credit returned to THDA would have to be reallocated under the Qualified Allocation Plan in place during

---

[7] Although the plaintiffs filed a motion for a preliminary injunction, the motion was never heard.

14

the year the tax credit was returned to LIHTC.

*Id.* When the court in *Villas* rejected Villas' challenge because of mootness, it implicitly found that Villas' reliance on the availability of additional tax credits in future years was speculative and that its claim did not involve the adjudication of present rights. The same reasoning applies in the present case.

We find no error in the trial court's conclusion that this case is moot.

## Exceptions to mootness

### 1. Issue of great public interest

The courts recognize an exception to mootness allowing them "to address issues of great importance to the public and the administration of justice." *Norma Faye*, 301 S.W.3d at 210. This exception is available, however, only "under 'exceptional circumstances where the public interest clearly appears.'" *Id.* (quoting *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977)). It is within the discretion of the courts to address such issues, but they are directed to analyze the following threshold considerations in exercising their discretion:

> (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

*Id.* at 210-11 (footnotes omitted). In arguing that this case implicates a significant public interest, the plaintiffs focus on the allegedly fraudulently-obtained Anderson County tax credits. However, all of the 2013 tax credits have already been allocated. The plaintiffs make allegations of fraud, but none of the alleged wrongdoers is a party to this action. Thus, the record is inadequate to address this issue. The THDA is the only defendant, and the only relief requested from the THDA is the allocation of tax credits in future years, a form of relief that is speculative and not related to any present justiciable controversy.

The plaintiffs have failed to establish the existence of an issue of great public importance in this case.

15

## 2. Capable of repetition but evading review

The other exception to the mootness doctrine concerns situations that are "capable of repetition yet evading review." *Alliance*, 182 S.W.3d at 339. This exception, which is invoked by the courts only in exceptional circumstances, requires the parties requesting it to demonstrate the following: "(1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs." *Alliance*, 182 S.W.3d at 340 (footnotes omitted); *see also Villas*, 2010 WL 1539843, at *5. Furthermore, "a mere theoretical possibility that an act might reoccur is not sufficient to invoke the 'capable of repetition yet evading review' exception." *Alliance*, 182 S.W.3d at 340. In order to invoke the exception, "'there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

In *Villas*, Villas argued that there was a reasonable expectation that the official acts that provoked the litigation would reoccur based on the THDA's 2009 QAP, which showed that the THDA intended to follow the same procedures regarding the acceptance of tax credit applications as it did in 2008. *Villas*, 2010 WL 1539843, at *5. According to Villas, these procedures, particularly the unclear application delivery instructions, were arbitrary and capricious. *Id.* The court rejected this argument, finding that the delivery instructions were "clear and obvious" and that "[t]he language [was] reasonable and put[] an applicator on notice of the deadline requirements or the place for delivery of the application." *Id.* Thus, the court determined that Villas had "failed to show 'a reasonable expectation' or 'demonstrated probability' that the same controversy will reoccur." *Id.* Moreover, the court observed that Villas argued that "LIHTC applicants," rather than Villas itself, would be prejudiced by language in the 2009 QAP, as required by factor three of the exception. *Id.* at *6. The *Villas* court also concluded that factor two, regarding the risk that effective judicial remedies could not be provided, was not satisfied because an applicant whose application was refused could "seek a judicial remedy by taking certain actions Villas simply failed to take"—such as, filing the petition earlier or seeking injunctive relief. *Id.* Because the three factors necessary to invoke the "capable of repetition yet evading review" exception were not present, the *Villas* court found no exception. *Id.*

In the case at hand, we likewise find that the three factors needed to invoke the "capable of repetition yet evading review" exception are not present. As to factor one, the reasonable expectation that the official acts that provoked the litigation will occur again, the record does not include the 2014 QAP; future years' QAPs may or may not

16

include similar scoring provisions as the 2013 QAP.  Also, future applications will involve different pieces of real estate and different competing applications.  Thus, the plaintiffs have not satisfied the first factor.  Factor two concerns the risk that effective judicial remedies cannot be provided in the event that the conduct at issue reoccurs.  As in *Villas*, the plaintiffs failed to take available steps to seek an effective judicial remedy in this action by waiting until December 31, 2013 to mail a request for a declaratory order to the THDA and by failing to request a preliminary injunction prior to that date to prevent the allocation of 2013 LIHT credits and preserve their claims.  Finally, as to factor three, the plaintiffs have failed to establish that they would be affected by a future "wrongful" award of tax credits.  Rather, the plaintiffs assert that "the interests of Nonprofit Housing and other competitors for tax credits *could* be prejudiced by the procedure that THDA has chosen for the review of its scoring decisions."  The exception requires, however, "that the same complaining party *will be prejudiced* by the official act when it reoccurs." *Alliance*, 182 S.W.3d at 340 (emphasis added).  A mere possibility is not sufficient. *Id.*

We find no error in the trial court's decision not to apply either of the exceptions to the mootness doctrine in this case.

CONCLUSION

The decision of the trial court is affirmed in all respects.  Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

17