IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 11, 2020 Session

## SHEILA MIKEL v. TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES

Appeal from the Chancery Court for Bradley County
No. 2018-CV-340      Jerri S. Bryant, Judge

_____

No. E2019-02112-COA-R3-CV
_____

A foster parent appealed the removal of two foster children from her home. This appeal arises from a petition for judicial review of the Tennessee Department of Children's Services Administrative Procedures Division's decision to dismiss the foster parent's appeal on the basis of mootness. The Chancery Court affirmed the Commissioner's decision. Finding substantial and material evidence in support of the Commissioner's decision, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

W. Neil Thomas, III and Curtis Bowe, III, Chattanooga, Tennessee, for the appellant, Sheila Mikel.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## I.     BACKGROUND

A.K. and S.K. ("the Children") were born in July of 2003 and February of 2007, respectively. Years later, the Juvenile Court for Bradley County, Tennessee, awarded custody of the Children to the Tennessee Department of Children's Services ("DCS").

The rights of the Children's biological parents were terminated. DCS referred the Children to Omni Visions, Inc. ("Omni"), a licensed child-placing agency.[1] Omni is not a state agency, but is under contract with DCS to provide foster care placement. Sheila Mikel ("Appellant") was once a therapist working for Omni's sister company, Omni Community Health. In that role, she was the Children's therapist for an unspecified time. Omni approved and opened Appellant's home as a pre-adoptive foster home for the Children. On June 30, 2016, Omni placed the Children in Appellant's foster home.

For the following year, Appellant nurtured and cared for the Children. In the summer of 2017, Appellant sought the advice of a psychiatrist who had been treating one of the Children, with DCS's approval, after observing what Appellant considered to be unusual displays of behavior from that child. The psychiatrist consequently diagnosed one of the Children with Dissociative Identity Disorder. DCS questioned the diagnosis and requested an independent diagnosis, which resulted in a diagnosis of Post-Traumatic Stress Syndrome with Moderate Dissociation. Appellant states that at this time DCS began accusing her of providing "therapy" to the Children for Dissociative Identity Disorder, which she denies.

On December 6, 2017, John Arias, a therapist who had been seeing the Children since December of 2016, sent a letter to DCS stating, in part, as follows:

> [Appellant] approached this Clinician in approximately June 2017 about the possibility of both girls having *Dissociative Identity Disorder (DID)*. . . . [Appellant] reported that S. was given the diagnosis by a local psychiatrist because of a drawing she had provided without the psychiatrist interviewing the child. [Appellant] reported that she was going to meet with a "local expert" in the field of DID to learn more about how to treat her foster children. Both [the Children] participated in a battery of tests at the Southeast Center of Excellence on September 25, 2017 and it was determined that they did not have *DID* but they had in fact *post-traumatic stress disorder (PTSD)* from years of abuse by their biological parents.

---

[1] "Licensed child-placing agency" is defined as "any agency operating under a license to place children for adoption issued by [DCS], or operating under a license from any governmental authority from any other state or territory or the District of Columbia, or any agency that operates under the authority of another country with the right to make placement of children for adoption and that has, in [DCS]'s sole determination, been authorized to place children for adoption in this state. Tenn. Code Ann. § 36-1-102(32). "'Child placing agency' means any entity or person that places children in foster boarding homes or foster homes for temporary care or for adoption or any other entity or person or group of persons who are engaged in providing adoption studies or foster care studies or placement services as defined by the rules of [DCS]." Tenn. Code Ann. § 37-5-501(b)(7).

It has come to my attention that [Appellant] continues to treat her foster children as if they have *DID*. [Appellant] also continues to provide the foster children with unlicensed and unsupervised *DID therapy* against the recommendation of their mental health therapist, the Southeast Center of Excellence, and [DCS]. Thus, it is my professional opinion that both [the Children] are being harmed both mentally and emotionally and can no longer be maintained safely by continuing to reside at their current foster home placement. It is my professional recommendation that both [the Children] be removed from their current foster home placement immediately and be placed in a home where they can experience both mental and emotional safety.

(Emphasis in original).

According to Appellant, Mr. Arias's therapy license was suspended in June of 2016 and he was placed on probation for three years. Appellant does not know whether Mr. Arias's license was reinstated by the time of his December 6, 2017, letter. That same day, Omni removed the Children from school without advance notice to Appellant. Appellant alleges that Omni lied to the school about the reason for taking the Children. The day after the Children's removal, December 7, 2017, Appellant received a form titled Tennessee Department of Children's Services Notice of Removal of a Child From a Foster Home. The notice was dated "12/7/17" and was issued and signed by Steve Dunn, Omni's associate regional director. The notice read:

This is to advise you of plans to remove [the Children] from your foster home on 12/6/17. . . . We have determined that there is an imminent threat to the health, safety or well being of [the Children] if [they] are not removed from your home immediately because [of] Mental & Emotional Abuse. The fourteen (14) day notice does not apply in cases of imminent risk. . . . You may appeal the decision as explained below; however, an appeal will not stay the removal of the child[ren] from your home pending its outcome.

By letter dated December 13, 2017, Omni informed Appellant, "at this time, your home has been closed. You have been closed in good standing which allows you the option of re-opening with Omni in the future."

Appellant appealed the removal of the Children from her home to DCS's Administrative Procedures Division ("the agency"). On January 12, 2018, DCS filed a motion seeking dismissal of the appeal, arguing that there was no home to which the

Children could be returned because Appellant's foster home had been closed by Omni on December 13, 2017, and the "State Rules do not provide a foster parent the right to appeal the closure of their home." Appellant responded that her home had been closed in good standing with a chance of reopening. The Administrative Judge denied DCS's motion.

Following preliminary motions, a hearing took place before the Administrative Judge on April 11, 2018. DCS renewed its motion seeking dismissal of the appeal. Mr. Dunn testified that Omni provided foster care for the Children through a contract it held with DCS. Mr. Dunn explained that the Children were classified as Level 2 children, that is, children with enhanced behavioral issues. By contrast, Level 1 children are those with minimal behavioral issues, those who do not "have significant mental health issues," and who typically function as "normal" children, said Mr. Dunn. DCS requested the Administrative Judge to take judicial notice that DCS foster homes care for Level 1 children only; Level 2 children are "contracted out to different fostering agencies." DCS stated that it "wouldn't likely be willing to work with Appellant," but that even if DCS wanted to breach the contract with Omni and open Appellant's home as a DCS foster home, these Children could not be placed there because they are classified as Level 2. Mr. Dunn further testified that although Omni's closure letter to Appellant stated that her home had been closed in good standing, Omni, in fact, had no intention of reopening Appellant's home due to her "demeanor and unwillingness to listen to the professionals involved and to follow their direction." Mr. Dunn testified that Appellant's home "is not a home that we want representative of Omni Visions." He explained that Omni does not close foster homes in bad standing "due to lawsuits and defamation issues." The Administrative Judge noted that she lacked the authority to open an Omni foster home. Appellant's counsel suggested that DCS may have the authority to "direct Omni Visions to reopen [Appellant's] home." Accordingly, the Administrative Judge held DCS's motion in abeyance.

The administrative proceedings continued on April 19, 2018. Appellant's counsel argued that "it's an obligation of [DCS] to figure out a way" to return the Children to Appellant. DCS again countered that the Children's classification as Level 2 meant that DCS could not open Appellant's home as a DCS foster home, and that "there is no mechanism for [DCS] to force Omni to open her home." Appellant's counsel affirmed that Appellant had not applied to reopen her foster home through another child placing agency, but noted that Omni's intention not to reopen Appellant's home had only been revealed during the April 11 hearing. The Administrative Judge reasoned that Appellant's foster home had been closed for several months; that she had not applied to reopen the home; and that the matter of the Children's removal had become moot because there was no method whereby the Children could be placed in Appellant's home or care. By Order of Dismissal entered May 9, 2018, the Administrative Judge found that "during

- 4 -

the pendency of the appeal, Appellant's foster home was closed by Omni Visions. Consequently, as [Appellant's] home is no longer an approved foster home, circumstances have changed and the remedy sought through this appeal cannot be granted." The Administrative Judge concluded that the appeal of the removal of the Children was moot and dismissed the appeal.

Appellant appealed to the Commissioner. By order entered September 21, 2018, the Commissioner's Designee affirmed the Administrative Judge's decision. On October 16, 2018, Appellant petitioned for judicial review in the Chancery Court, pursuant to the Uniform Administrative Procedures Act, Tennessee Code Annotated section 4-5-322. Appellant's petition challenged the dismissal of the administrative appeal and alleged that the Children's removal from her foster home violated DCS regulations and denied her substantive and procedural due process. As before, DCS moved for dismissal of the petition on the basis of mootness. By order entered July 10, 2019, the Chancery Court found "[Appellant] is no longer certified as a foster home. There is nothing to show she has asked to become one and has been denied. This Court, therefore, does not have any specific authority to order the children returned to her. Additionally, the Court does not have specific authority to order children into a specific home." The court further found that "there ha[ve] been no specific allegations of irregularity in the procedure before the agency that are not shown in the record and proof does not need to be taken." The Chancery Court found that the case was moot, affirmed the Administrative Judge's ruling, and dismissed the petition.[2]

Due to delay in the parties' receipt of the Chancery Court's order, the court set aside its order for the sole purpose of reentering it on November 25, 2019. This appeal followed.

## II.    ISSUE

The dispositive issue on appeal is whether substantial and material evidence supports the agency's decision to dismiss the appeal from the Notice of Removal on the basis of mootness.

---

[2] The Chancery Court also denied the motion for summary judgment that Appellant filed regarding her due process argument. The court found that "Rule 56 ha[d] not been properly followed," noting that "[t]here is no citation to the record and no facts can be added to the record in the affidavit of [Appellant]."

- 5 -

## III.    STANDARD OF REVIEW

Courts defer to the decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise.  Accordingly, judicial review of an agency's action follows the narrow, statutorily defined standard of review contained in the Uniform Administrative Procedures Act ("UAPA"), Tennessee Code Annotated section 4-5-322(h), rather than the broad standard of review used in other civil appeals. *Wayne County v. Tenn. Solid Waste Disposal Control Bd*., 756 S.W.2d 274, 279 (Tenn.  Ct. App. 1988).  Section 4-5-322 provides for judicial review of an agency's decision as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

Under the UAPA, this Court must apply the substantial and material evidence standard to the agency's factual findings.  *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007).  Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'"  *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd*., 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009)

(quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). "The substantial and material evidence standard has also been described as requiring something less than a preponderance of the evidence but more than a scintilla or glimmer." *Beard v. Bd. of Professional Responsibility*, 288 S.W.3d 838, 855 (Tenn. 2009) (internal quotation omitted). "The narrower scope of review used to review an agency's factual determinations suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne County*, 756 S.W.2d at 279 (citing 2 C. Koch, Administrative Law & Practice § 9.4 (1985)).

## IV. DISCUSSION

In her brief, Appellant declares that "[t]he relief which has always been sought in this case is the reversal of the dismissal of the Appeal from the Notice of Removal and the return of the [Children] to their foster mother." Appellant asks this court to determine that the removal of the Children was illegal because she was not given advance notice and because the removal was not stayed once she appealed. The following statutes and regulations are instructive:

> The department shall provide timely, written notification of changes in the case plan or termination of the placement and the reasons for the changes or termination of placement to the foster parent or parents, except in the instances of immediate response for child protective services[.].

Tenn. Code Ann. § 37-2-415(16).

> *Advance notice of the intent to remove a child from a foster home shall not be required when the Department determines that there is an imminent threat of harm to the child's health or safety* if he is not removed from the foster family home immediately. In such cases the foster parent(s) shall be given as much advance notice as possible without endangering the child's health or safety and shall be advised of their right to appeal the decision, *although an appeal in such cases will not stay the removal of the child pending the outcome of the appeal*.

Tenn. Comp. R. & Regs. 0250-05-13-.02(2) (emphasis added).

> The final decision as to whether to remove the child from the foster family home will be made in accordance with what is found to be in the best

interest of the child. When the interests of an adult and those of the child are in conflict, the interest of the child will be controlling.

Tenn. Comp. R. & Regs. 0250-05-13-.08(1). Here, the Notice of Removal issued to Appellant clearly states that DCS determined that an imminent threat to the health, safety, or well being of the Children necessitated their removal without advance notice.

Still, the main thrust of Appellant's grievance is whether the licensed child placing agency itself lacked the authority to remove the Children from school and to issue the Notice of Removal on DCS's behalf. The parties have not cited, nor have we found, authority directly addressing these inquiries. More importantly, an opinion resolving the overarching issue of the propriety of the Children's removal would amount to an advisory opinion.[3] The court's role is to adjudicate legal rights, "not to give abstract or advisory opinions." *Thomas v. Shelby Cnty.*, 416 S.W.3d 389, 393 (Tenn. Ct. App. 2011) (citing *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009)). As explained below, we conclude that this case is moot.

Courts limit their role to deciding "'legal controversies.'" *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 203 (quoting *White v. Kelton*, 232 S.W. 668, 670 (Tenn. 1921)). A proceeding is deemed a legal controversy "when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests." *Id.* (citations omitted). "A case must remain justiciable through the entire course of litigation, including any appeal," and "[a] case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights." *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005). "A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204.

After the commencement of this case, Appellant's foster home was closed with no option to reopen through Omni. Omni is not a party to this action. Omni's decision to close Appellant's foster home is not appealable, and the record contains no authority to the contrary.[4] Appellant has not applied to open her foster home through any other licensed child placing agency. DCS itself is unwilling to designate Appellant's home as a DCS foster home (one that potentially could care for Level 1 children), and Appellant

---

[3] An "advisory opinion" is "[a] nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose." BLACK'S LAW DICTIONARY (11th ed. 2019).

[4] We note, too, that the *closure* of Appellant's foster home was not the subject of the administrative appeal.

does not seek this relief.  DCS itself cannot place Level 2 children, such as these Children, into Appellant's foster home which is the relief she seeks.  Thus, this litigation no longer serves as a means of providing judicial relief to Appellant.  Based on these facts, the Children cannot in any event be returned to her home, so we consider the case moot.  *See id*. ("A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party.").

"[A]s a general rule, Tennessee's appellate courts should dismiss appeals that have become moot regardless of how appealing it may be to do otherwise."  *Id*. at 210. Appellant further argues that this case falls within two of the recognized exceptions to the mootness doctrine, namely, that "the issue is of great public importance or affects the administration of justice" and "the challenged conduct is capable of repetition and of such short duration that it will evade judicial review."  *Id*. at 204.  We will briefly address these arguments.

First, Appellant contends "because DCS engages in extensive public advertising to extoll the benefits of its foster parent program, a decision is necessary to send a message to DCS that children may not be arbitrarily taken from their foster parents without judicial intervention."  We disagree and find that this case is about the rights and claims of an individual: Appellant.  *See id.* at 210 ("the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties[.]"). Second, as to the "capable of repetition yet evading review" exception, Appellant maintains that the "mere fact that for over two years DCS has successfully avoided review of its conduct should be enough to conclude that this issue will likely arise in the future."  It is not enough, for the reasons we have previously explained:

> The courts invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases.  Parties requesting a court to invoke the exception must demonstrate (1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs.  A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception.  Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party."  *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982); 1 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 2.13, at 37 (3d ed. Supp. 2005).

*Alliance for Native Am. Indian Rights in Tenn., Inc.*, 182 S.W.3d at 339-40 (footnotes omitted). Appellant has not shown that the three requirements for application of this exception apply.

The Administrative Judge's decision to dismiss Appellant's appeal of the Children's removal from her foster home on the basis of mootness is not arbitrary and capricious and is supported by material evidence. Furthermore, we find that no exception to the mootness doctrine applies to the facts in the record. Accordingly, we affirm the dismissal of this action.

## V. CONCLUSION

We affirm the decision of the Chancery Court affirming the agency's decision. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Sheila Mikel.

_____
JOHN W. McCLARTY, JUDGE